**CITY OF CARYVILLE, City of LaFollette, Plaintiffs-Appellants,**

v.

**CAMPBELL COUNTY, Defendant-Appellee,**

**Starling and Earie Kennedy, Willie Q. Marlow and Edna Elliott, Plaintiff-Intervenors-Appellees.**

Court of Appeals of Tennessee, Western Section.

Aug. 18, 1983.

Application for Permission to Appeal Denied Oct. 24, 1983.

David H. Dunaway, LaFollette, Robert E. Pryor, Knoxville, for plaintiffs-appellants.

Neil G. McBride and William A. Allen, Oak Ridge, for plaintiff-intervenors-appellees.

Frank D. Dossett, LaFollette, Barry K. Maxwell, Knoxville, for defendant-appellee.

CRAWFORD, Judge.

This case involves the construction of part of the coal severance tax law codified in Tenn.Code Ann. §§ 67–5901 through 67–5905 (1976 and 1982 Cum.Supp.). The statutes pertinent to the controversy before us are Sections 67–5901 and 67–5905.

The pertinent part of Tenn.Code Ann. § 67–5901 (1976), is as follows:

There is hereby levied a severance tax on all coal products severed from the grounds in Tennessee. The tax shall be levied for the use and benefit of local governments only and all revenues collected from the tax, except deductions for administration and collection provided for herein, shall be allocated to the county from which such coal products were severed. Administration and collection of this tax shall be by the state of Tennessee in the same manner as other taxes are collected by the state for and on behalf of local governments, and the department of revenue may promulgate all rules and regulations necessary and reasonable for the administration of the provisions of this chapter.

The pertinent part of Tenn.Code Ann. § 67–5905 (1982 Cum.Supp.), is as follows: (a) All revenues collected under this chapter in a county wherein coal products are severed, less an amount of three per cent (3%) of the tax and all of the penalties and interest collected, which shall be retained by the department of revenue and credited to its current service revenue to cover the expenses of administration and collection, shall be remitted by the commissioner of the department of revenue to that county in which the coal products were severed for the following specific purposes: One-half (½) of all revenues collected shall be used for the educational system or systems of said county; and the remaining one-half (½) of all revenues collected shall be used for highway and stream cleaning systems of said county.

The City of Caryville, an incorporated town in Campbell County, filed suit for declaratory judgment against Campbell County for the purposes of determining the City's rights and damages under Tenn.Code Ann. §§ 67–5901 through 67–5905, the coal severance tax law. By amendment, other incorporated cities of Campbell County were allowed to become parties-plaintiffs and parties-defendants. In addition, several citizens of Campbell County were allowed to intervene as plaintiffs.

The issue presented for review as framed by the appellants, the City of Caryville and others, is:

> Does the term "local governments" as used in the Gennessee Code [sic] Severance Tax Law, *T.C.A.* § 67–5901 et seq., mean both municipal governments located within a county and the individual county government?

We perceive the real issue to be whether the municipalities within Campbell County are entitled to a part of the coal severance tax. The court below held that the complaint should be dismissed, basing its decision on its interpretation of the Act that the term "local governments" means counties alone, to the exclusion of municipalities. We agree with the result reached by the trial court for the reasons set out below.

■ The rule of statutory construction to which all others yield is that the intention of the legislature must prevail. *City of Humboldt v. Morris,* 579 S.W.2d 860, 863 (Tenn.App.1978); *see Tidwell v. Collins,* 522 S.W.2d 674, 676 (Tenn.1975). Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language. *Worrall v. Kroger Company,* 545 S.W.2d 736, 738 (Tenn.1977); *see City of Lenoir v. State ex rel. City of Loudon,* 571 S.W.2d 297, 299 (Tenn.1978).

■ It is the duty of the court to reconcile inconsistent or repugnant provisions of a statute and to construe a statute so that no part will be inoperative, superfluous, void or insignificant. It must give effect to every word, phrase, clause and sentence of the act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another. *Tidwell v. Collins, supra* at 676–677.

■ Appellant asserts that the statement in Section 67–5901 that "the tax shall be levied for the use and benefit of local governments, coupled with the express earmark of the funds in Section 67–5905 for "educational system or systems of the county" and "highway and stream cleaning system of the county" indicates that the intent of the Legislature was for the municipality, as a local government, to participate in the proceeds. Appellant contends that use of the plural "systems" indicates that the Legislature had in mind more than one organization, since the county itself would have one educational systems and only one highway system.

We do not agree with the assertions of the appellant. *Black's Law Dictionary,* 846 (5th ed. 1979), defines local government as, "City, county or other governing body at a level smaller than a state." *Webster's Third New International Dictionary* 1327 (1971), defines local government as, "the government of a specific local area (as a city, county, or town) constituting a subdivision of a nation, state, or other major political unit." The Act itself does not define "local government," and the term appears to be used with various meanings in other sections of the Act.

In our reading of the Act, the term "local government" is used in contrast to the central or state government and is not meant to denote a specific entity. The Act is quite explicit that revenues "collected from the tax ... shall be allocated *to the county* from which such coal products were severed," Tenn.Code Ann. § 67–5901 (emphasis added), and "all revenues collected under this chapter in a county wherein coal products are severed ... shall be remitted ... *to that county* in which the coal products were severed ...." Tenn.Code Ann. § 67–5905 (emphasis added). We think that the Legislature made it quite clear that the proceeds from the tax were to be allocated and paid to the county. The Act is conspicuously silent on any direction to the commissioner of revenue to make any payment to any one other than the county, although it would have been quite easy to do had the Legislature intended some entity other than the county to share in the proceeds.

When the Legislature stated how the money was to be used it did not provide any formula for making any distribution to any

other entity, thus indicating that it did not contemplate any division to be made.

The statement in the Act that the proceeds were earmarked for educational system or systems *of* said county and highway and stream systems *of* said county indicates to the court that the Legislature intended for the county functions to be funded by these proceeds. The word "of" as indicated by *Webster's Third International Dictionary* 1565 (1971), has many connotations but, as pointed out therein, is used as a function word indicating a possessive relationship, which is the use made of the phrase "of the county" in this instance. Had the Legislature intended the use of the word county to be merely a territorial limit when setting the purpose, we feel the Legislature would have used the term "in the county" to make this designation. We are fortified in our opinion of this legislative intent by the Legislature's passage in 1979 of the Campbell County Private Act, 1979 Tenn.Priv. Acts chap. 9. The Private Act pertains specifically to the Coal Severance Tax Law as it applies to Campbell County and states:

> It shall be the duty of the chief administrative officer to ensure that the portion of the revenues collected through the coal severance tax that are designated for highway and stream cleaning systems in accordance with Tennessee Code Annotated, Title 67, Chapter 59, shall only be allocated for such highways and streams that exist in those districts from which the coal products were originally severed from the ground. · The chief administrative officer shall have prepared and submit to the county legislative body an annual report disclosing the disbursement and usage of the coal severance tax revenues for the highways and streams in the various districts of the county.

1979 Tenn.Priv. Acts chap. 9.

We must assume that the Legislature of 1979 was well aware of the Act that it was attempting to affect. We do not think that it would be likely that the Legislature would direct the use of the funds for only certain districts in the county when it had previously authorized cities to have funds.

We feel that the Legislature intended in the enactment of the coal severance tax law to have the proceeds paid to the county from which the coal was severed to be used for the benefit of the county which, in effect, benefits all citizens, including those who are also citizens of the incorporated cities located within the county.

We therefore affirm the action of the trial court. The costs of the appeal are adjudged against the appellant.

NEARN, P.J. W.S., and HIGHERS, J., concur.