**James and Berna Dene CLARK,
Petitioners/Appellees,**

v.

**Alyse EVANS, Respondent/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 17, 1989.

Walter L. Bailey, Memphis, Arkie Byrd,
Little Rock, Ark., for petitioners/appellees.

William B. Seligstein, Memphis, for re-
spondent/appellant.

CRAWFORD, Judge.

This is an appeal from the order of the trial court granting visitation rights to grandparents. The parents of the child were divorced in October, 1984, and custody of the minor child was granted to the mother. On March 5, 1987, the paternal grandparents, James and Berna Dene Clark, filed a petition pursuant to T.C.A. § 36–6–301 (Supp.1988) against the mother, Alyse L. Evans, for visitation rights with their minor granddaughter, Whitney Elizabeth Clark. The petition alleges that since the divorce, the grandparents have been allowed by the mother to visit their granddaughter only at the mother's discretion, and that the best interests of the child would be served if specific visitation periods are ordered by the court. The mother answered the petition and joined issue on the allegations therein. A hearing was held in September, 1987, and in May, 1988, the trial court entered the following order granting visitation:

> This cause came on to be heard before the Honorable Charles O. McPherson, Judge of Division 2 of the Circuit Courts of Shelby County, Tennessee, on the Motion of Petitioners for grandparent visitation. The Petitioners, James and Berna Dene Clark, appeared in person and by their attorneys, Arkie Byrd and Walter Bailey. The defendant appeared in person and by her attorney, William B. Seligstein, and the Court having jurisdiction of the parties and the subject matter after hearing the evidence, finds:
>
> 1. That upon the testimony of the witnesses, it is the opinion of this Court that visitation with the grandparents, James and Berna Dene Clark, with the minor child, Whitney Elizabeth Clark, should be granted.
>
> 2. The Court is of the opinion that no substantial reason was given for denying Petitioners visitation with their grandchild.
>
> 3. That the Court orders and the grandparents at the hearing of this cause have so agreed to not subject the minor grandchild to any religious training or take her to any of their religious institutions during their visitation.

4. That the cost of this cause is adjudged against petitioner.

WHEREFORE, IT IS SO ORDERED BY THE COURT that Petitioners shall be entitled to visitation with their granddaughter for the reasons hereinabove stated.

Before the introduction of evidence there was considerable dialogue between the court and counsel for the respondent mother concerning the burden of proof. The court ruled that the respondent mother had the burden of proof to show that the grandparent visitation would not be in the best interests of the child. The parties virtually conceded that a primary problem is the difference in religion of the parties. The paternal grandparents are members of the Church of God, while mother and the child are Jewish. A great deal of the testimony at trial centered on whether the grandparents would expose the child to their religious beliefs and thus confuse the child in her development of religious values. The child was four years of age at the time of trial.

Because of the court's ruling concerning burden of proof, the respondent mother presented her proof first. She testified that she attempted at all times to work out reasonable arrangements for visitation with the grandparents as circumstances warranted. She states that prior to and after her marriage to the petitioners' son, the petitioners attempted to and did control her mind to the extent that she had no independent will and abandoned her family and friends. This effort on the part of the grandparents to impose their beliefs on others is her primary concern with their having visitation rights. She also noted that, although the petition does not specify, the visitation sought by the grandparents is in their home at Etowah, Tennessee, which is some 400 miles from Memphis. She asserts that the distance and time involved in the child's travel to Etowah for the visitation at her present age would be highly detrimental.

Mrs. Evans' father, Sanford Lichterman, testified that he had had a great deal of experience in cultism. While he had no first-hand knowledge of the influence and pressures which might have been placed on his daughter while she was associated with the Clark family, she did have a marked change in behavior which indicated a loss of independent will similar to that experienced by those controlled by cultism. This testimony was corroborated by the testimony of Mrs. Evans' mother, Rae Jean Lichterman.

The mother also presented the testimony of Dr. Richard L. Luscomb who testified to the importance of the stability of a young child's environment. He stated that when a child of four, in the process of developing values and beliefs, is given contradictory information based on different beliefs and personal attitudes, a problem is created in a child's development. Dr. Luscomb also testified that since the grandparents live approximately eight hours away and a major portion of a weekend visit by the child would be spent riding in an automobile, it would not be in the child's best interests to travel such a distance. His analysis was based on his belief that a child would become irritated on a long journey, in addition to the child's normal insecurity when displaced from the normal home environment. Dr. Luscomb admitted that it is healthy for children to have a relationship with their grandparents, but also testified that if a child had no previous relationship with his or her grandparents, there would be no impact on the child's development.

The petitioners' proof consisted of their individual testimony. The grandmother, Mrs. Clark, testified that she had had a good relationship with her daughter-in-law, Mrs. Evans, and that she had considered her like the daughter she never had. She also testified that she had not been able to see her granddaughter for the past sixteen months before the hearing, but that prior thereto she had a good relationship with the child. She further stated that when the child was visiting in their home previously the mother did not object to the child attending the grandparents' church, but that if this is objectionable to the mother at this time she is willing to abide by a court order not to expose the child to their reli-

gious beliefs. This testimony was corroborated by the testimony of the grandfather.

The issues for review by this Court are:
1. Whether the trial court erred by placing the burden of proof on respondent mother that the grandparent visitation would not be in the best interests of the minor child?
2. Whether the trial court erred in granting the petition for visitation?
We will consider these issues together.

At common law, grandparents did not have any legal right to visit with their grandchildren if such visitation was forbidden by the child's parents. *See* Note, Tennessee Statutory Visitation Rights of Grandparents and the Best Interest of the Child, 15 Mem.St.U.L.Rev. 635 (1985); Annotation, Grandparents' Visitation Rights, 90 A.L.R.3d 222, 225 (1979). The rationale behind this rule stemmed from the belief that parents have a right and duty to control their minor child and that any judicial enforcement of grandparent visitation rights would impede this parental authority. *See,* Grandparents' Visitation Rights, at 225–26; *see generally* 59 Am.Jur.2d *Parent and Child,* § 10 (1987). Another rationale articulated by various courts is that the best interests of the child would not be served by forcing the child into the midst of a family conflict between the parents and grandparents. Grandparents' Visitation Rights, at 226; Tennessee Statutory Visitation Rights of Grandparents, at 636. Consequently, the parent's obligation to allow grandparent visitation has been categorized as a "moral" as opposed to a "legal" obligation. *Id.*

As a result of the competing interest of (1) the parents and their right to custody and control of their child, (2) the state's duty to protect the child and (3) the recognition that grandparents play a significant role in the development of a child, various state legislatures began enacting grandparent visitation statutes during the 1960's. Tennessee Statutory Visitation Rights of Grandparents, at 637. As a general rule, these statutes provided that visitation should be granted only when it is found to be in the best interests of the child as determined by the trial judge. Id. at 638. Tennessee's first legislation on the subject was Chapter 74 of the 1971 Tennessee Public Acts which states:

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:
SECTION 1. If either the father or mother of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the child during its minority by the court of competent jurisdiction upon a finding that such visitation rights would be in the best interest of the minor child.
SECTION 2. This Act shall not apply if the child has been adopted by a person other than a step-parent. Any visitation rights granted pursuant to this act prior to the adoption of the child shall be automatically terminated upon such adoption.

In 1975, the legislature amended the codification of the 1971 Act by adding authorization for grandparent visitation when the parents of the minor child are divorced. The requirement that such visitation be in the best interests of the child was retained. 1975 Tenn.Pub.Acts, chapter 330. After this amendment, the Act was codified as T.C.A. § 36–6–301 (1984) and this statute was again amended in 1985 to delete the necessity of either death or divorce of the parents. The amending Act also materially broadened grandparent visitation rights in areas not pertinent to the case before us.

The petition in the instant case is brought pursuant to the present statute, T.C.A. § 36–6–301 (Supp.1988) which provides in part pertinent to the case before us:

36–6–301. **Grandparents visitation rights.**—(a) The natural or legal grandparents of an unmarried minor child may be granted reasonable visitation rights to the child during its minority by a court of competent jurisdiction upon a finding that such visitation rights would be in the best interests of the minor child. Provided, however, the provisions of this subsection shall not apply in the case of any child who has been adopted by any person other than a relative of the child or a stepparent of the child.

(b) This section shall not apply if the child has been adopted by a person other than a stepparent. Any visitation rights granted pursuant to this section prior to the adoption of the child shall be automatically terminated upon such adoption.

\* \* \* \* \* \*

■ In the instant case the grandparents are seeking relief which is provided by statute upon a finding that what they are seeking is in the best interests of the minor child. The primary rule of statutory construction is that the legislative intent must prevail and that this intent is to be ascertained primarily from the natural and ordinary meaning of the language when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of the language. *City of Caryville v. Campbell County,* 660 S.W.2d 510, 512 (Tenn.App. 1983). It is clear under the wording of this statute that the petitioners have the affirmative of the issues. It is well established in this state that the burden of proof is on the party having the affirmative of an issue and that burden does not shift. *Big Fork Mining Co. v. Tennessee Water Quality Control Bd.,* 620 S.W.2d 515, 520 (Tenn. App.1981).

*Gibson's Suits in Chancery* states:

Sec. 190. The Burden of Proof.—The duty of proving or disproving, the facts in dispute on an issue between the parties to an action, is termed the burden of proof. This burden rests on that party against whom, on the state of the pleadings, the issue would be decided if no proof in regard to it was introduced....

H. Gibson, Gibson's Suits in Chancery, § 190 (W. Inman 6th ed. 1982). The burden of proof in the instant case rests upon the petitioners to prove that the grant of visitation rights would be in the best interests of the minor child.

■ The child is four years of age and although the petition sought specific visitation privileges, the trial court's order, without any finding concerning the best interests of the child, fails to establish specific visitation privileges. The record is lacking any evidence to establish that visitation rights are in the best interests of the minor child. For example, there is no proof on behalf of petitioners that they have any unique position with the minor child except being grandparents. There is no proof of where the petitioners seek visitation rights and that the place where visitation rights are sought is a proper place for visitation. There is no proof concerning alternative types of visitation and their effect upon the best interests of the child. Without prolonging the opinion, needless to say, there is absolutely no proof to support the petition. We recognize, of course, that the child is indeed fortunate to have caring and loving grandparents, and it is the feeling of this Court that everything possible should be done to foster and maintain a close, loving relationship between the grandparents and the child. Apparently, the legislature shares the feeling of this Court, but has required by its statutory enactment that in each case where the visitation is contested, there must be proof that the visitation is in the best interests of the child. In a case which presents the geographical problems attendant to visitation, as in the instant case, it is imperative that consideration be given to the time, place and circumstances of the visitation, especially when the child is of tender years.

Since this case was tried by the court sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the findings of fact by the trial court. T.R.A.P. 13(d). In the instant case, the trial court made no explicit finding that the visitation rights of the grandparents would be in the best interests of the child, but such a finding is implicit in his order allowing the visitation. However, from our review of the record, we find that the evidence preponderates against the finding of the trial court in this regard.

Apparently, the trial court's ruling on the burden of proof changed the tenor and the strategy of the hearing as evidenced by the lack of proof on behalf of petitioners. Under these circumstances the petitioners should have an opportunity to present their case. Accordingly, the order of the trial court is reversed and this case is remanded for a new trial. Costs of the appeal are assessed equally against the parties.

While this court does not and should not ordinarily comment about cases remanded for a new trial, we feel the interests of this young child compel additional remarks. This child is indeed fortunate to have two sets of grandparents and hopefully this status will continue for long years to come. The inherent value of having the love and guidance of grandparents is immeasureable and the deprivation by a parent of such a privilege should be carefully considered. These parties should get together and establish workable arrangements for reasonable visitation, having due regard for the tender age of the child and the geographical problems associated with the exercise of the visitation privileges. Close relationships should be encouraged, established and maintained between the child and both sets of grandparents and as the child matures, visitation rights may and should be expanded, commensurate with the child's maturity. If the parents of this child and both sets of grandparents truly love the child and want her to have the best of everything, they will use every effort to resolve their differences presented in the case before us.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.