Tony DINGMAN, Plaintiff–Appellant,

v.

G.R. HARVELL, individually and as Mayor of the City of Millington, D.H. Wages, P.A. Dunn, K.T. Whitlock, C.C. Hollingsworth, H.D. Monsier, L.M. Wilson, Ed Haley, each individually and as members of the Board of Aldermen of the City of Millington, Tennessee, Defendants–Appellees,

and

Memphis Publishing Company and William C. Bayne, Intervening Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 15, 1991.

Application for Permission to Appeal Denied by Supreme Court June 10, 1991.

J. Houston Gordon, Covington, for plaintiff-appellant.

Louis P. Britt, III, Carl I. Jacobson, Memphis, for defendants-appellees.

S. Russell Headrick, Lucian T. Pera, Memphis, for intervening appellees.

CRAWFORD, Judge.

Plaintiff, Tony Dingman, appeals from the judgment of the Chancery Court in favor of defendants, G.R. Harvell, individually and as Mayor of the City of Millington, D.H. Wages, P.A. Dunn, K.T. Whitlock, C.C. Hollingsworth, H.D. Monsier, L.M. Wilson, Ed Haley, each individually and as members of the Board of Aldermen of the City of Millington, Tennessee.

Plaintiff avers in his complaint that he was the appointed and serving Chief of Police of the City of Millington pursuant to the City's Charter and that the defendants were the duly elected Mayor and members of the Board of Aldermen of the City of Millington. He alleges that he was terminated as Chief of Police on January 2, 1989, and that the defendants prior thereto met together in secret on more than one occasion, conducted deliberations concerning his position as Chief of Police and therefore the actions of the defendants were in violation of T.C.A. § 8–44–101 et seq., the "open meetings" act, and were a nullity and of no effect.

Count II of the complaint alleges that plaintiff was guilty of no act or omission to cause his termination and that pursuant to the Charter could not be removed from office except for misfeasance, nonfeasance and malfeasance, and that therefore termination of his service as Chief of Police was illegal and in contradiction of the Charter of the City of Millington.

Count III of the complaint avers implied provisions of good faith and fair dealing in plaintiff's contract of employment which were violated by the defendants.

Count IV alleges a conspiracy by the defendants to remove plaintiff from office illegally.

Count V of the complaint alleges that the defendant's actions were taken under color of state law and in violation of 42 U.S.C. 1983 and 1985 and that plaintiff was deprived of a property right in violation of his constitutional rights of due process when he was refused an open public meeting where he could defend the charges made against him. Plaintiff prays for injunctive relief requiring his reinstatement as Chief of Police and for damages and other expenses and costs.

Defendants' answer joins issue on the material allegations made against them and denies they violated the open meetings act in any manner. Defendants admit that plaintiff was informed prior to the January 2, 1989 meeting of the Board of Aldermen that his name would be placed before the Board for reappointment and that the Mayor understood a majority of the Board was opposed to his reappointment. Defendants specifically deny that prior to January 2, 1989 a decision had been made by the Board to remove plaintiff from office and they deny that there was any violation of

T.C.A. § 8–44–102. They aver that they acted in conformance with the Charter of the City of Millington. Defendants deny that plaintiff had any property right in his position as Chief of Police and aver that he served at the will and pleasure of the Board of Aldermen. They further deny that plaintiff was entitled to any type of hearing upon a motion for his reappointment.

The record reflects the following pertinent facts: Plaintiff, age 53 at the time of trial, began his employment with the City of Millington as a policeman in 1963, and was subsequently promoted to sergeant, lieutenant and then captain respectively. On June 5, 1972, he was appointed by the Mayor and Board of Aldermen of the City of Millington as the Chief of Police.

Section 6.02 of the Charter of City of Millington provides as follows:

CHIEF OF POLICE—QUALIFICATIONS—APPOINTMENT—TERM OF OFFICE—SUSPENSION AND REMOVAL FROM OFFICE

Sec. 6.02. Be it further enacted, That the Chief of Police shall be thirty (30) years of age or older and shall be a resident of the City of Millington. Said Chief of Police shall be appointed by the Mayor, subject to the approval of the Board of Aldermen, and shall serve at the pleasure of the Board of Mayor and Aldermen until his successor is appointed and qualified. The Mayor may, without the consent of the Board, for disciplinary purposes, suspend without pay the Chief of Police for any length of time not exceeding thirty (30) days; provided, however, that the Mayor shall, simultaneously with said suspension, give to the Chief of Police written notice setting forth the reasons for such suspension. The Mayor shall report such action to the members of the Board at the time the Chief of Police is suspended. The Chief of Police shall be given notice of and an opportunity to be heard, individually and through witnesses, at the next special or regular meeting, at which time the Board of Aldermen will consider the action of the Mayor in suspending the Chief of Police. If charges are not sustained the Board may, in its discretion, order the police officer reinstated and paid for the time suspended, or such part thereof as it may determine to be proper under the circumstances. If the charges are sustained, the Board of Aldermen may confirm the action of the Mayor ordering the suspension or it may remove him from office if the charges so warrant. The Chief of Police shall likewise be subject to ouster under the general laws of the State and shall likewise be subject to suspension or removal in the manner stated above by the Board of Mayor and Aldermen for malfeasance, misfeasance, non-feasance in office, crime or other offenses against the laws of the State of Tennessee or ordinances of the City of Millington. (As added by ch. 143, pr. acts of 1951, and amended by ch. 5, pr. acts of 1955). (Emphasis added).

Throughout plaintiff's seventeen year tenure as Chief of Police a vote on his reappointment had only occurred on two previous occasions, once in 1973 and again in 1978, after the election of new boards. His name was again placed before the Board for reappointment on January 2, 1989, but the reappointment was rejected unanimously by the seven members of the Board. There was no hearing or reception by the Board of statements from anyone prior to the vote of rejection. At the same meeting, a new Chief of Police was appointed to the position.

Plaintiff began experiencing some problems as the Chief of Police as early as 1978. The problems became more serious in 1987. In 1987, and subsequent thereto, criticism of the police department surfaced and the operation of the department generated considerable publicity. The Millington general election was held in September, 1988. A major campaign issue during this election involved the operation of the Millington Police Department and plaintiff's position as Chief of Police. The criticism of plaintiff as Chief of Police continued throughout the fall of 1988 and the Milling-

ton mayor indicated his decision to place the plaintiff up for reappointment before the new Board of Aldermen at its January, 1989, meeting. When the plaintiff learned in December of 1988 that he would be placed before the Board for appointment he stated to the mayor that he was being "thrown to the wolves." Plaintiff knew that he did not enjoy support of a majority of the Board of Aldermen.

After the September 1988 general election, and prior to the January 2, 1989 Board meeting, the mayor, on different occasions had various discussions with several of the aldermen regarding plaintiff's position as Chief of Police, and the procedure for placing him before the Board for reappointment. Discussions were also held concerning placing the plaintiff with the Millington Fire Department. Some of the discussions were by telephone and some were in person. In December, 1988, the Millington Public Works Department barbecue was attended by several aldermen, including, Wilson, Whitlock, Monsier and Dunn. They all testified that they discussed the position of Chief of Police and the procedure required under the Charter for removal or reappointment of the Chief of Police and actually contacted the City Attorney to discuss the procedure required. They denied that they discussed their respective decision on whether to reappoint plaintiff or that they tried to elicit or influence votes one to another. The proof indicated that there were other conversations between the mayor and various aldermen about possibly transferring the plaintiff to the position of fire chief and the mayor contacted the members of the Board concerning their thoughts about making such an appointment. All the defendants testified, however, that there were no discussions as to pros and cons of plaintiff's continuance as police chief, nor were there any deliberations toward a decision concerning plaintiff's reappointment.

At the January 2, 1989 meeting of the Mayor and Board of Aldermen, the Board voted in public session unanimously to reject the Mayor's motion to reappoint plaintiff as Chief of Police. Subsequent to this vote, the Board voted to appoint another person as police chief to take office immediately.

Plaintiff presents three issues for review. For a better understanding of our Opinion we will first consider Issue 2 which, as set out in plaintiff's brief, is:

2. Whether the learned chancellor erred by failing to find that appellant was wrongfully discharged in violation of (A) the city charter (B) state law (C) his implied contract with the city and (D) due process of law.

Plaintiff asserts that when he was appointed Chief of Police he did not relinquish his position as an employee police officer and thus was entitled to the protection of the charter provisions dealing with city employees. He insists that upon his termination as Chief of Police, he still remained a police officer employee and could not be terminated from that employment without complying with the hearing provisions established for city employees. Plaintiff also asserts that he had a property interest in his position as Chief of Police and was entitled to a due process hearing before being removed from office. Section 6.02 of the city's charter provides that the Chief of Police is appointed by the Mayor subject to the approval of the Board of Aldermen. In this section the charter explicitly provides that the Chief of Police "shall serve at the pleasure of the Board of Mayor and Aldermen until his successor is appointed and qualified."

■ It is clear plaintiff is a public officer or official. *Gamblin v. Town of Bruceton*, 802 S.W.2d 690 (Tenn.Ct.App., W.S., 1990, application for permission to appeal denied Dec. 31, 1990); *Sitton v. Fulton*, 566 S.W.2d 887 (Tenn.App.1978).

■ In the instant case, the office of Chief of Police has no prescribed term and therefore at best the term of office is limited to that of the Board of Aldermen which is the appointing authority. *Gamblin v. Town of Bruceton*, 802 S.W.2d at 693 (Tenn.Ct.App., W.S., 1990, application for permission to appeal denied Dec. 31, 1990). Plaintiff's term of office is even more restrictive because the Charter specifically

provides that the Chief of Police serves at the will and pleasure of the Board of Aldermen.

Plaintiff argues that defendants did not consider plaintiff's term of office limited by the term of office of the appointing authority nor by the provisions of the Charter because he had only been reappointed on two prior occasions in the long period he had held the office. We must respectfully disagree with this argument by plaintiff.

56 Am.Jur.2d Municipal Corporations § 255 (1971) states:

The term of a municipal office, as distinguished from a mere employment, cannot be established by contract, and if it is not established by statute or ordinance the board of municipal officers having the power of appointment cannot make a binding contract engaging a person for a public office for a term extending beyond their own. In other words, the term of an appointed officer, not prescribed by statute, expires with the expiration of the term of the appointing body. However, in order to avoid the inconvenience to the public which would result if an important municipal office was left without a holder, it is frequently provided by law that the term of the holder of such office shall continue until his successor is appointed and qualified, and holding over pending the election of a successor is as much a part of the term of office as that which precedes it, where a person lawfully continues in office by virtue of his original election and qualification, after the expiration of the statutory period but before his successor is elected and qualified. The incumbent holds over a de jure officer until his successor is duly appointed and qualified.... (Emphasis added).

■ Plaintiff argues that the other provisions of Sec. 6.02 of the charter providing for disciplinary action against the Chief of Police require that the Chief of Police be given a hearing before he can be terminated. We disagree with plaintiff's interpretation of the charter provisions. The primary rule of statutory construction is that the intention of the legislative body must prevail. The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language. *City of Caryville v. Campbell County*, 660 S.W.2d 510 (Tenn.App.1983), and cases cited therein. It is the Court's duty to reconcile inconsistent or repugnant provisions of a statute to construe a statute so that no part will be inoperative superfluous, void or insignificant. Effect must be given to every word, phrase, clause and sentence of the act in order to achieve the legislative intent and the statute should be construed so that no section will destroy another. 660 S.W.2d at 512.

■ We do not feel that the provisions of Sec. 6.02 of the charter providing for the disciplinary action against the chief of police was intended to limit the power of the Board of Aldermen to select a Chief of Police of its choice as specifically provided in the charter. The terms and provisions of Sec. 6.02 are clear and unambiguous that the Chief of Police serves at the will and pleasure of the Board of Aldermen. We find no limiting language in such provision.

56 Am.Jur. Municipal Corporations § 333 (1971) states:

Where an appointed municipal or county officer does not hold office for a fixed term or under expressed or implied restrictions as to the manner of his removal from office, it is common for the court to express his tenure as being at the "pleasure" of the appointing power. If a municipal or county office is in fact held at the pleasure of the appointing power, there seems to be no doubt that removal may be accomplished without notice or hearing.... (Emphasis added).

■ In the case at bar, plaintiff is a public officer who was appointed by the Board of Aldermen to serve at the pleasure of the Board "until his successor is appointed and qualified." A motion was made at a duly constituted meeting of the Board to reappoint plaintiff and the motion was rejected. Thereupon a motion was made to

appoint another person as Chief of Police and this motion was passed. The new appointee duly qualified as Chief of Police and therefore under the clear and unambiguous terms of the charter plaintiff's term as Chief of Police terminated. Since plaintiff served at the will and pleasure of the Board he possessed no property interest in continued employment as the Chief of Police.

■ Plaintiff also claims that he was an employee of the city as a police officer, even though he had the position of Chief of Police. He argues that he is entitled to the hearing procedures established for termination of employees set out in the city employees' handbook. There is nothing that we can find in the record to substantiate plaintiff's argument. The trial court correctly found that there was no merit in this claim by plaintiff. From our review of the record, the proceedings utilized by defendants for the appointment of a successor and the termination of plaintiff's term of office were properly conducted.

The first issue plaintiff presents for review as set out in his brief is:

1. Whether the learned chancellor erred by failing to find that appellees' meetings, conversations and discussions between December 18, 1988 and the board meeting of January 2, 1989 were violative of the provisions of T.C.A. § 8–44–101 et seq.

The applicable sections of Tennessee Code Annotated are as follows:

**8–44–101. Policy—Construction.—**(a) The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret.

\* \* \* \* \* \*

**8–44–102. Open meetings—"Governing body" defined—"Meeting" defined.—**(a) All meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Tennessee Constitution.

\* \* \* \* \* \*

(c) "Meeting" means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter. Meeting does not include any on-site inspection of any project or program.

(d) Nothing in this section shall be construed as to require a chance meeting of two (2) or more members of a public body to be considered a public meeting. No such chance meetings, informal assemblages, or electronic communication shall be used to decide or deliberate public business in circumvention of the spirit or requirements of this part.

**8–44–104. Minutes recorded and open to public—Secret votes prohibited.—**

\* \* \* \* \* \*

(b) All votes of any such governmental body shall be by public vote or public ballot or public roll call. No secret votes, or secret ballots, or secret roll calls shall be allowed. As used in this chapter, "public vote" means a vote in which the "aye" faction vocally expresses its will in unison and in which the "nay" faction, subsequently, vocally expresses its will in unison.

**8–44–105. Action nullified—Exception.—**Any action taken at a meeting in violation of this part shall be void and of no effect; provided, that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned.

■ The trial court found at the conclusion of the evidentiary hearing that there had been no violation of T.C.A. § 8–44–101 et seq. The court noted in its findings of fact that plaintiff's performance as the Chief of Police had created controversy over a number of years and that his retention of that office was a major issue in the 1988 Millington election for Aldermen. Although there were discussions concerning plaintiff's position as Chief of Police, the trial court found from the evidence that there was no secret vote or deliberation to remove plaintiff from office or to refuse to reappoint him.

■ Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Taking the evidence as a whole and including the statements attributed to the Mayor and the Aldermen in the *Commercial Appeal* newspaper articles hereinafter discussed under issue 3, we cannot say that the evidence preponderates against the finding of the trial court that defendants did not convene in secret meetings and deliberate toward a decision concerning Chief Dingman's position as Chief of Police. The evidence indicates that while most, if not all, of the Aldermen may have had a fixed opinion of their forthcoming vote on Chief Dingman prior to the January 2, 1989, meeting, these fixed opinions did not result from secret deliberations by the Aldermen of public business and a circumvention of the Open Meetings Act.

As we have heretofore noted, plaintiff was not entitled to a hearing and the defendants made their decision known in a public forum with a public vote. We concur in the trial court's finding that there was no violation of the Open Meetings Act.

■ The third issue for review as set out in plaintiff's brief is:

3. Assuming that this Honorable Court does not grant appellant relief under those arguments advanced in 1 and 2, Supra, appellant urges that the trial court erred by failing to compel the presence of the requested news reporter witness.

Two newspaper articles were published in the *Commercial Appeal* concerning Dingman's removal as police chief and some Board members and the Mayor were quoted in the articles. Plaintiff subpoenaed the reporter who handled the story and the reporter and the *Commercial Appeal* filed a motion to quash the subpoena pursuant to T.C.A. § 24-1-208 (1990 Supp.), the "shield law," which provides:

**24-1-208. Persons gathering information for publication or broadcast—Disclosure.**—(a) A person engaged in gathering information for publication or broadcast connected with or employed by the news media or press, or who is independently engaged in gathering information for publication or broadcast, shall not be required by a court, a grand jury, the legislature, or any administrative body, to disclose before the general assembly or any Tennessee court, grand jury, agency, department, or commission any information or the source of any information procured for publication or broadcast.

(b) Subsection (a) shall not apply with respect to the source of any allegedly defamatory information in any case where the defendant in a civil action for defamation asserts a defense based on the source of such information.

(c)(1) Any person seeking information or the source thereof protected under this section may apply for an order divesting such protection. Such application shall be made to the judge of the court having jurisdiction over the hearing, action or other proceeding in which the information sought is pending.

(2) The application shall be granted only if the court after hearing the parties determines that the person seeking the information has shown by clear and convincing evidence that:

(A) There is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law;

(B) The person has demonstrated that the information sought cannot reasonably be obtained by alternative means; and

(C) The person has demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information.

(3)(A) Any order of the trial court may be appealed to the court of appeals in the same manner as other civil cases. The court of appeals shall make an independent determination of the applicability of

the standards in this subsection to the facts in the record and shall not accord a presumption of correctness to the trial court's findings.

(B) The execution of or any proceeding to enforce a judgment divesting the protection of this section shall be stayed pending appeal upon the timely filing of a notice of appeal in accordance with Rule 3 of the Tennessee Rules of Appellate Procedure, and the appeal shall be expedited upon the docket of the court of appeals upon the application of either party.

(C) Any order of the court of appeals may be appealed to the supreme court of Tennessee as provided by law.

The court set a hearing on the motion to quash the subpoena and plaintiff introduced deposition testimony of the involved Aldermen and the Mayor.

It appears from our examination of the testimony introduced at this hearing that the involved Aldermen and the Mayor admitted the statements attributed to them in the article in all material respects. The proof introduced failed to show that there is probable cause to believe that the subpoenaed reporter has information which is relevant and which cannot be obtained by alternative means. The trial court correctly found that the plaintiff failed to show by clear and convincing evidence that the subpoena should not be quashed.

As we previously noted, the trial court and this Court on review accepted the statements attributed to the Aldermen and the Mayor in the newspaper articles at their face value, but the evidence submitted on behalf of plaintiff simply did not prove a violation of the open meetings act.

The judgment of the trial court is affirmed and this case is remanded to the trial court for such other proceedings as may be necessary. Costs of the appeal are assessed against the appellant for which execution may issue, if necessary.

FARMER, J., and McLEMORE, Special Judge, concur.

## ORDER

This cause came on to be regularly considered by the Court on the record and for the reasons stated in the Court's Opinion, of even date, it is Ordered that:

1. The judgment of the trial court is affirmed and this case is remanded to the trial court for such other proceedings as may be necessary.

2. Costs of the appeal are assessed against the appellant for which execution may issue, if necessary.