**Donald L. GAY, Plaintiff/Appellant,**

v.

**CITY OF SOMERVILLE, Tennessee, Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Jan. 26, 1994.

Application for Permission to Appeal
Denied by Supreme Court
May 9, 1994.

Russell X. Thompson, Alan Chambers, Bolivar, for plaintiff/appellant.

Charles Sevier, David McLaughlin, Wilson, McRae, Ivy, Sevier, McTyier and Strain, Charles V. Holmes, Memphis, for defendant/appellee.

FARMER, Judge.

Donald Gay (Gay) was terminated as Chief of Police for the City of Somerville (City) on July 2, 1991 by the City Administrator, Michael French (French).[1] This appeal is from the lower court's dismissal of Gay's petition for writ of certiorari after the Board of Mayor and Aldermen (Board) affirmed the action taken by French.

Gay raises the following issues on appeal:

1. Whether the Court erred in concluding that the Petitioner was an at will as opposed to civil service employee.

2. Whether the Court correctly construed Sections 4(b) and 6 of the Charter of the City of Somerville, Tennessee to authorize the City Administrator to discharge the Police Chief.

3. Whether Petitioner was entitled to a [pretermination] hearing under Section 6 of the Charter of the City of Somerville, Tennessee.

4. Whether the Board of Mayor and Aldermen were impartial decision-makers; and whether they should have recused themselves from hearing the Petitioner's termination case.

5. Whether Petitioner was given legally sufficient notice that the city relied upon prior and progressive discipline as a basis for termination.

---

1. Gay was employed as Chief of Police on May 1, 1985. He was informed of his termination by letter which reads:

This is to advise you that you are terminated as Chief of Police for the Town of Somerville. This termination is given in accordance with Section 4(b) of the Charter of the Town of Somerville for neglect of duty.

This action is taken as a result of an incident Saturday, June 29, 1991, where you left your duty assignment during the demonstration by Mr. Isaac Richman on the town square. This demonstration was scheduled to begin at 11 a.m. I personally observed that you were not at the scene during the actual demonstration. Twenty three people participated in the demonstration that took place on the north side of the court house and lasted from 12:30 p.m. to 1:30 p.m. This resulted in the single police officer on duty (Firn Jordan) having to handle the demonstration alone.

Please consider today, July 2, 1991, your last day of employment.

6. Whether there is any evidence in the record to sustain a finding that Petitioner was guilty of cause for discharge under Section 6 of the City Charter; and whether the Board's decision was arbitrary, capricious, and in excess of jurisdiction.

In dismissing the petition, the trial judge stated that "at the time of [Gay's] termination, [he] was an at will employee,[2] subject only to the requirements of the city charter for his termination." Provisions of the charter pertinent to this appeal are as follows:

Section 4. *City Administrator*.... The city administrator shall have the following powers and duties:

. . . .

(b) To recommend to Board of Mayor and Aldermen the appointment of all heads of departments. The City Administrator has full power and authority to hire all city employees to vacancies as they occur, to suspend, or to dismiss and remove any city employee for incompetency, or any violation, neglect, or disregard of the duties imposed upon them by said corporation. The power to hire or to suspend or to dismiss and remove may be delegated by the City Administrator to any department head regarding any employee of their department.

. . . .

*BOARD TO APPOINT AND REMOVE OFFICERS, ETC.*

Section 6. Be it further enacted. That the Board of Mayor and Aldermen of said town shall have full power and authority to appoint all officers and agents of the corporation, such as they may deem necessary, and may provide by ordinances. The Board shall have full power and authority to dismiss and remove any officer or agent appointed or elected by them, including the Recorder and Town Marshal, for incompetency, or any violation, neglect or disregard of the duties imposed upon them by the by-laws or ordinances of said corporation; provided, that two-thirds of the Board of Mayor and Aldermen concur in the removal or dismissal.

The trial judge interpreted these provisions as follows:

The Court finds that a reading of the sections of the charter together establishes that the City Administrator may not hire a department head, but can recommend to the Board of Mayor and Aldermen the appointment of a department head. However, once hired, a department head becomes an "employee", and that the City Administrator has the lawful authority to suspend or dismiss any employee for incompetency, or any violation, neglect or disregard of the duties imposed upon them by the City.

■■■ Gay contends that, pursuant to the charter, the City Administrator is without authority to terminate a department head which includes the Chief of Police. Thus, the administrator's termination of Gay is void *ab initio*. We are inclined to agree. Section 6 of the charter unequivocally states that the Board shall have "full power" to appoint all officers and agents and to remove any officer or agent appointed or elected by them, including the town marshal. "The office of city marshal is political in character; and he has been regarded as occupying the same office as a chief of police. Authorities differ as to whether he is an officer or an employee." 62 C.J.S. *Municipal Corporations* § 566(a)(1949). It is clear that the city charter designates the town marshal an officer. In *Dingman v. Harvell*, 814 S.W.2d 362, 365 (Tenn.App.1991), this Court held that a chief of police is a public officer. *Dingman* additionally stated:

The primary rule of statutory construction is that the intention of the legislative body must prevail. The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language. *City of Caryville v. Campbell County*, 660 S.W.2d 510 (Tenn.App.1983), and cases cited

---

**2.** Although the trial judge identified Gay as an at will employee, a thorough reading of his opinion establishes that Gay's employment is subject to

the charter provisions and that he may only be terminated for specified causes.

therein. It is the Court's duty to reconcile inconsistent or repugnant provisions of a statute to construe a statute so that no part will be inoperative superfluous, void or insignificant. Effect must be given to every word, phrase, clause and sentence of the act in order to achieve the legislative intent and the statute should be construed so that no section will destroy another. 660 S.W.2d at 512.

*Dingman*, 814 S.W.2d at 366. In order to give effect to each and every word of the charter provisions, we hold that only the Board of Mayor and Aldermen has the authority to remove the Chief of Police. Any other construction would render the language in Section 6 granting "full power" to hire or remove officers or agents to the Board superfluous and insignificant as Section 4(b) grants "full power" to the City Administrator to hire and remove all city employees. The charter clearly distinguishes between "city employees" and "officers and agents." The City contends that it is within the Board's province to interpret the provisions of its charter. We agree that considerable deference will be granted to an administrative agency's interpretation of its own regulation unless the interpretation is inconsistent with the terms of the regulation. *See General Care Corp. v. Mid–South Found. for Medical Care, Inc.*, 778 F.Supp. 405, 409 (W.D.Tenn.1991).

■ We find, however, that the City Administrator's unauthorized act was ratified by the subsequent actions of the Board. "Ratification is the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do. Ratification is confirmation after conduct." *Bagley & Co. v. Union–Buffalo Mills Co.*, 9 Tenn. App. 63, 68 (1928). The specific acts of the

Board which lead us to this conclusion are discussed through this opinion.

Gay next contends that Section 6 of the City Charter entitles him to a pretermination hearing. The record reveals that the administrator's actions were ratified by the Board, by unanimous decision, only after an original hearing in which Gay was allowed to testify and present witnesses as to the charges against him. We find the hearing conducted before the Board to be timely.

Gay next questions the impartiality of the Board and argues that they should have recused themselves. At the hearing, counsel for Gay made a motion that the Mayor and Board recuse themselves because of their prejudgment of the case. Specifically, counsel stated that the Board had advised French to accept applications for the position of chief of police and that the Mayor had made certain statements to which witnesses would testify that Gay would never be chief regardless of the hearing conducted.[3] The Mayor denied the motion in the absence of "[a motion] by the Board, by some Board member, for the entire Board to recuse itself, . . . ."

■ "It is axiomatic that due process requires the opportunity of the party charged to be heard at a meaningful time and in a meaningful manner, before an impartial tribunal." *Cooper v. Williamson County Bd. of Educ.*, 803 S.W.2d 200, 202 (Tenn.1990). There is a presumption of honesty and integrity in those functioning as administrative decision makers, *Cooper*, 803 S.W.2d at 203, and the party claiming bias bears the burden of proof. *Hadges v. Corbisiero*, 760 F.Supp. 388, 391 (S.D.N.Y 1991).

■ We find the prior acceptance of applications,[4] Gailey's testimony and the fact that the Board believed Gay's employment to be terminated at the time of the hearing to

---

3. Counsel's statements were accepted as an offer of proof, but he was not allowed to call witnesses. At the insistence of the Mayor, however, Robert Gailey subsequently testified that French told him "that there was no way in hell, . . . that [Gay] was going to be Police Chief . . . that he had fired him and that was all there was to it." He stated that the Mayor "related the same thing, that it was pretty well a done deal and that it was going to be a vote of six to one to dismiss the Police Chief." The Mayor denied making this statement.

4. The record includes a newspaper article stating that twenty-four applications had been received for the "vacated Somerville Police Chief," as of July 24, after "the [Board] instructed [French] to begin seeking applications at their July 8 meeting."

constitute sufficient evidence of bias on behalf of the Board. Under the circumstances of this case, however, the only administrative agency authorized to render a determination was the Board of Mayor and Aldermen. In fact, Gay argues that "[t]he only authority to dismiss the Chief of Police was vested in the Board. . . ." Consequently, we find it appropriate to apply the *Rule of Necessity* as pronounced by the United States Supreme Court in *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980).

In *Fitzgerald v. City of Maryland Heights,* 796 S.W.2d 52 (Mo.Ct.App.1990), the city mayor appealed his impeachment by the city council. The mayor argued, inter alia, that he was deprived of procedural due process because several of the councilmen who sat on the Board of Impeachment were not impartial. *Fitzgerald,* 796 S.W.2d at 58. The statute authorizing impeachment provided: "Any elective officer may . . . for cause shown, be removed from office by a two-thirds vote of all the members elected to the city council. . . ." *Id.* at 55 n. 2. Four councilmen were challenged by the mayor. One recused himself. *Id.* at 58. In ruling that the mayor was not deprived of procedural due process, the Missouri Court of Appeals stated:

> [D]isqualifying the three challenged councilmen would have disabled the Board of Impeachment, which could only act upon the vote of two-thirds, or six, of its eight elected members. § 77.340. Due process considerations do not require a biased administrative agency to forego making a decision which no other entity is authorized to make. Under such circumstances, the so-called *Rule of Necessity* permits an adjudicative body to proceed in spite of its possible bias or self-interest. [*Powell v.*] *Wallace, supra,* 718 S.W.2d [545] at 548 [ (Mo.App.1986) ].

The Mayor contends the *Rule of Necessity* is unconstitutional. We disagree. Both the United States Supreme Court and our courts have recently traced the long lineage of the *Rule* and emphatically reasserted its validity. *U.S. v. Will,* 449 U.S. 200, 214–16, 101 S.Ct. 471, 480–81, 66 L.Ed.2d 392, 405–06 (1980); *Barker v. Sec-*

*retary of State's Office,* 752 S.W.2d 437, 440–41 (Mo.App.1988).

*Id.* 796 S.W.2d at 60. We note that Gay moved that the entire Board recuse itself and this is his contention on appeal.

■ *Fitzgerald* further stated that in such circumstances it would "adjust" its standard of review as follows:

> It makes no sense to show the extreme deference of viewing the evidence in the light most favorable to an administrative body which is not completely impartial. In *Barker, supra,* the Court adopted the suggestion made in 3 Davis, Administrative Law Treatise, § 19.9 (2d Ed.1980), that
>
> > '. . . ways can sometimes be found to relieve against the injustice [of permitting a biased administrative decision]. Whenever the rule of necessity is invoked and the administrative decision is reviewable, the reviewing court, without altering the law about scope of review, may and probably should review with special intensity.'
>
> 752 S.W.2d at 441.
>
> As the *Barker* Court stressed, our review is not de novo. *Id.* We do not substitute our judgment for that of the administrative agency, which, though biased, retains expertise for which we should show some respect. Our standard of review should therefore be deferential, but it should also compensate for the possibility that bias may have tainted the agency's exercise of its expertise. Accordingly, the decision of a biased administrative agency acting under the *Rule of Necessity* should be upheld if the evidence presented at the administrative hearing would have entitled an objective decision maker to reach the same conclusion.

*Id.* 796 S.W.2d at 61.

We adopt the standard of review espoused by the Missouri Court of Appeals to determine whether Gay was properly discharged. French related the following additional causes for termination at the hearing:

> (1) Continued tardiness—Gay was tardy from 5 to 15 minutes over a period of 7 days.

(2) Two occasions whereby loaded shotguns were left in unlocked squad cars. The second incident resulted in an oral reprimand.

(3) Incompetency in the taking of a special census from which Gay received a written reprimand. Gay did not follow directions and French personally had to correct the census. The reprimand stated that "continued behavior in this manner would require additional discipline up to and including possibly termination."

(4) Inappropriate comment to female police officer resulting in a written reprimand with virtually the same wording as above. French described the comment as "sexist" and "insulting."

As to the Isaac Richman demonstration, French stated that he expressed to Gay that he wanted Gay at the demonstration and that Gay agreed to be there.

Gay testified that he "jokingly" commented to a female police officer that her "chest is too small" when she complained that her badge was too large. Gay explained, "[w]hat you've got to understand is that policemen do joke and carry on with each other and nobody had made anything out of this, but someone else." Gay stated that the officer never complained to him about the comment. French testified that the officer did complain to him. Gay stated that he was "simply told to do a census" and that he was "not allowed" to attend the meeting on how it was to be conducted. Gay stated that French expressed displeasure with the census only after "it was all over." Gay admitted receiving a letter from French expressing dissatisfaction with his performance.

■ As to the demonstration, Gay testified that he informed French that he "would be there to handle" the Richman demonstration to which French replied "good." Gay arrived at the demonstration at 11:00. He stated that six people whom he knew to be nonviolent were present and that there was nothing inflammatory about their signs. Gay placed a sergeant on patrol and told her to call him if a problem arose. Gay stated that "there was not a problem at that demonstration." Cockarell testified that at 11:30 or 12:00 he drove around the courthouse square and observed five or six people standing around the courthouse. He did not observe an impeding of traffic. Cockarell stated that Gay was an "excellent" police chief, that he did not know of any criticisms of Gay, that the department had improved and that he had never known Gay to neglect his duty. He further testified that he would not be surprised if a superior officer was upset with him if he was assigned a duty post and then decided "on [his] own [to leave] because [he] was not needed or the situation didn't justify [his] presence." Based upon the record before us, we conclude that an objective decision maker could reach the same conclusion as the Board that Gay was neglectful of his duties.

■ Gay claims that he was not given legally sufficient notice that the City intended to rely upon prior incidents of discipline as a basis for termination. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). Notice of the charges must be given at a reasonable time before the hearing is to occur. *Miller v. City of Mission, Kansas,* 705 F.2d 368, 372 (10th Cir.1983). The record reveals that Gay was clearly given notice of the charge that he had neglected his duties with regard to the Richman demonstration. We find that an objective decision maker could reach the same conclusion as the Board that Gay neglected his duties as to this matter which alone is sufficient cause for removal. We conclude, however, that Gay also received adequate notice of the charges pertaining to the inefficient census taking and the inappropriate comment to the female officer. These incidents resulted in Gay receiving a written reprimand in which the possibility of termination was suggested. Furthermore, Gay addressed these charges at the hearing by testifying and presenting witnesses in his behalf.

 Based upon the foregoing, we find that the action taken by French was ratified by the Board of Mayor and Aldermen after notice and a hearing which satisfied Gay's constitutional rights of procedural due process. We believe, however, that Gay is entitled to back pay as his termination was not effective until the board meeting of August 12, 1991. Thus, this case is remanded to the trial court to determine the appropriate amount of compensation due Gay. The judgment, in all other respects, is affirmed.

Costs are taxed to Appellant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.