IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

JUDY PEWITT,

     Plaintiff-Appellant,

Vs.

Williamson Circuit #93145
C.A. No. 01A01-9501-CV-00025

LILLIE BUFORD, A. CLIFF
FRENSLEY and WILLIAMSON
COUNTY, TENNESSEE,

     Defendants-Appellees.

**FILED**

**October 20, 1995**

Cecil Crowson, Jr.
**Appellate Court Clerk**

FROM THE WILLIAMSON COUNTY CIRCUIT COURT

THE HONORABLE HENRY DENMARK BELL, JUDGE

James G. Stranch and Jane B. Stranch of
Branstetter, Kilgore, Stranch & Jennings of Nashville
For Plaintiff-Appellant

Paul L. Sprader of Manier, Herod,
Hollabaugh & Smith of Nashville
For Defendant-Appellee, Buford

Thomas M. Donnell, Jr. and Alan T. Fister of
Stewart, Estes & donnell of Nashville
for Defendants-Appellees, Frensley and Williamson County

*REVERSED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:

W. FRANK CRAWFORD, JUDGE

CONCUR:

ALAN E. HIGHERS, JUDGE

DAVID R. FARMER, JUDGE

This appeal involves a suit primarily based on the Public Employee Political Freedom Act of 1980, T.C.A. §§ 8-50-601 - 8-50-604 (1993) (hereinafter PEPFA). Plaintiff, Judy Pewitt, appeals from the circuit court's summary judgment order dismissing Pewitt's PEPFA and retaliatory discharge claims against defendants, Lillie Buford, Cliff Frensley, and Williamson County.

THE FACTS

In October of 1986, Pewitt was hired to fill a part-time position at the Williamson County Trustee's Office. In 1987, she became a full-time employee. Lillie Buford, the County Trustee, ran the office and was Pewitt's supervisor.

Buford's husband owned a sole proprietorship known as Buford Trucking. While working in the trustee's office, Pewitt noticed that Buford used the trustee's office and its employees to perform various services for Buford Trucking. Pewitt believed that this improper use of county employees interfered with the work of the trustee's office, and that Buford was abusing her position as trustee. Pewitt contacted Clyde Lynch, a county commissioner,[1] and told him what was happening at the trustee's office.

Believing that Pewitt's complaints were significant, Lynch arranged a meeting with Rick Buerger, the County Attorney, and Bob Ring, the County Executive, to discuss Pewitt's allegations. Lynch then contacted Joe Baugh, the District Attorney for Williamson County, and they decided to arrange a meeting with the Tennessee Bureau of Investigation (TBI). Lynch explained Pewitt's allegations to the TBI, and thereafter a TBI agent called Pewitt.

In her meeting with the TBI agent, Pewitt indicated that Buford Trucking timecards were delivered to the trustee's office every Thursday. She stated that

_____

[1]County commissioner is an elective office in Williamson County.

2

the trustee's office employees would then fill out these cards and prepare the payroll for the trucking company. In May of 1991, the TBI raided the trustee's office and confiscated payroll records and timecards of Buford Trucking from the trustee's office.

Immediately following the raid, Buford continued as trustee, and Pewitt became concerned that Buford would somehow discover her identity as the informant. Melissa Tidwell, a secretary at Buford Trucking, stated in her affidavit that she had heard Buford speculate that Pewitt was the informant. Tidwell also stated in her affidavit that Buford indicated that she would fire Pewitt if she learned that Pewitt had in fact been the informant.

Pewitt's concern increased due to her belief that Buford suspected the informant to be someone within the trustee's office. Pewitt became convinced that Buford discovered her role in the raid sometime in the middle of 1991 when a TBI agent contacted Pewitt on Pewitt's unlisted, private line at the trustee's office. Pewitt alleged that from this point on, Buford began to discriminate against her. She alleged that Buford excluded her from various tasks, that Buford excluded her from social conversations, and that Buford began to record her absences (although Buford did not record the absences of other employees). Pewitt further claims that as a result of stress and fear, she began experiencing problems with her eyes, and she was forced to take a leave of absence.

After medical treatment and a period away from work, Pewitt's condition improved to the point that she was ready to return to work. Pewitt contacted Buford and indicated her desire to return, to which Buford allegedly replied, "I haven't fired you yet." When Pewitt returned, she discovered that her desk had been moved to a room which had previously contained only the copying

3

machine. Pewitt was upset because she was the sole occupant of the room, her files had not been moved into the room, and she could not find some of her personal items which she allegedly left behind. Pewitt was further upset by the fact that Buford had assigned some of her duties to other employees. Pewitt, believing that the situation was untenable, immediately resigned. However, Pewitt told various Williamson County Officials that she wanted her job back when the investigation of the trustee's office was concluded.

Buford was indicted by the Williamson County Grand Jury for her misuse of the trustee's office, and she ultimately agreed to resign as trustee. While Buford was negotiating her resignation, Frensley, a candidate for trustee, contacted Commissioner Lynch to seek his support. Lynch asked Frensley if he would give Pewitt her job back if he were appointed, and Frensley indicated that he would not. After Frensley was appointed trustee, Lynch and Pewitt met with him in an attempt to get Pewitt rehired. At the meeting, Frensley indicated that there were no openings in the office, and that he would not hire Pewitt in any event. Frensley indicated that Pewitt had a reputation as a troublemaker, and that the other women in the trustee's office did not want to work with her.

Pewitt then filed suit against Buford, Frensley, and Williamson County, alleging retaliatory discharge and violation of the Public Employee Political Freedom Act of 1980 (PEPFA), T.C.A. §§ 8-50-601 - 8-50-604 (1993). The various defendants answered the allegations, and, following extensive discovery, filed motions for summary judgment. The trial court granted summary judgment as to all defendants, and this appeal ensued. The issue for review is whether the trial court erred in granting the defendants' motions for summary judgment.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the

4

moving party is entitled to judgment as a matter of law. Tenn.R.Civ.P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. [citations omitted]. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211. (emphasis in original).

The summary judgment process should only be used as a means of concluding a case when there are no genuine issues of material fact, and the case can be resolved on the legal issues alone. *Id.* at 210 (citing *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988)). Summary judgment is not to be used as a substitute for a trial of genuine and material factual issues. *Byrd*, 847 S.W.2d at 210 (citing *Blocker v. Regional Medical Ctr.*, 722 S.W.2d 660, 660-61 (Tenn. 1987)). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Byrd*, 847 S.W.2d at 211 (citing *Dunn*, 833 S.W.2d at 80).

5

The Public Employee Political Freedom Act of 1980, as codified, provides:

> T.C.A. 8-50-601. Short title. - This part shall be known and may be cited as the "Public Employee Political Freedom Act of 1980."
>
> T.C.A. 8-50-602. Public Employee's communication with elected public officials. --
> (a) No public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever.
> (b) For purposes of this part, "public employee" means any person providing services for the state of Tennessee, state agencies, counties, municipalities, or subdivisions of such governmental bodies in Tennessee for which compensation is paid.
>
> 8-50-603. Discipline or discrimination for communication prohibited -- Damages. --
> (a) It is unlawful for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official.
>
> (b) If the court of competent jurisdiction determines that a public employer has disciplined, threatened to discipline or otherwise discriminated against an employee because such employee exercised the rights provided by this part, such employee shall be entitled to treble damages plus reasonable attorney fees.
>
> 8-50-604. Construction. - No provision of this part shall be construed to prohibit an employer from correcting or reprimanding an employee for making untrue allegations concerning any job-related matter to an elected public official.

The appellees argue that PEPFA does not apply to the case sub judice, because the elements of the statute are not met. The first issue to be addressed is the question of who is the "public employer" under the statute. The issue was not raised by the appellees, but rather by the trial court. In its summary judgment order, the trial court did not specifically state which of the defendant-appellees constituted the public employer for purposes of PEPFA, however, the court did state that Williamson County is not a "public employer" under the Act.

6

The court stated:

> Under the . . . Act . . . by implication a "public employer" is the person who has the authority to hire, discharge, and determine the conditions of employment with respect to a "public employee." The apparent purpose of the statute is to punish the individual who violates the act by making such individual liable to the employee for treble damages and attorney fees. There is nothing in the statute to suggest that the county has vicarious liability for a violation by the County Trustee . . . .

We must respectfully disagree with the trial court.

We find no support in the statute for the conclusions of the trial court that Williamson County is not a public employer, or that the purpose of the Act is to punish the "individual who violates the act" rather than the "public employer." Though T.C.A. § 8-50-602(b) does not specifically define who is a "public employer," it does specifically define who is a "public employee" under the Act. A public employee is defined as "*any person providing services for* the State of Tennessee, state agencies, *counties*, municipalities, or subdivisions of such governmental bodies in Tennessee for which compensation is paid." T.C.A. § 8-50-602(b)(1993) (emphasis supplied). Thus, any person who provides services to the employers listed in § 8-50-602(b) is a "public employee."

To be a "public employee," one must be the servant of a "public employer."[2] Since one who provides services for compensation to the employers listed in § 8-50-602(b) is a public employee, it logically follows that the employers to whom those services are provided, are "public employer[s]." Thus, we conclude that

_____

[2] It is difficult to conceive of an employment relationship in which an employee would be a public employee not employed by a public employer, and none of the appellees have presented this Court a situation in which such a relationship would or could exist.

Williamson County is a "public employer" for purposes of PEPFA.[3] Because Pewitt was a county employee, Williamson County must necessarily be her "public employer."

We must also respectfully disagree with the trial court's conclusion that "the apparent purpose of the act is to punish the individual who violates the act." This conclusion is contrary to the rules of statutory construction.

The rule of statutory construction to which all others must yield is that the intention of the legislature must prevail. *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 498 (Tenn. App. 1983); *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn. App. 1978). "[L}egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977). The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant. The Court must give effect to every word, phrase, clause, and sentence of the Act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another. *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn. App. 1983); *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975).

It seems apparent from the Act's language that the Legislature is

---

[3] This conclusion is consistent with other provisions of Tennessee Code Annotated, Title 8 which concerns (and is thus entitled) "Public Officers and Employees." T.C.A. § 8-50-1101(4) defines a "public employer" as "[t]he state of Tennessee . . . [a] *county*, city, town, municipality or any other political subdivision of the state . . . ." T.C.A. § 8-50-1101(4)(1993) (emphasis supplied). T.C.A. § 8-33-101 similarly defines a public employer as "*any government, department, or agency* . . . of this state, or *of any county*, municipality or other civil or political subdivision thereof, including any department or agency thereof." T.C.A. § 8-33-101(4), (5) (emphasis supplied).

attempting to insure free and uninhibited communication between persons employed in government and their respective elected officials. Obviously, the Legislature recognized that such communication can inure to the public good and assist in operating economical and efficient public offices. The Act seeks to prevent public employers from disciplining or otherwise discriminating against public employees for communicating with elected public officials. In PEPFA, the Legislature imposes liability upon the "*public employer*" rather than the *individual* who "discipline[s], threaten[s] to discipline or . . . discriminate[s] . . . ." T.C.A. §§ 8-50-603 (a), (b) (1993). If the Legislature wished to impose liability upon the individual who actually performs the discriminatory or disciplinary actions, the Legislature could have easily made a provision therefor. The imposition of liability upon the "public employer," as opposed to the individual "discriminator," is plain, clear, and unambiguous. Thus, we cannot agree with the conclusion of the trial court that the purpose of the Act is to punish the individual "discriminator." Rather, we think the purpose of the Act is to facilitate free and open communication between public employees and elected officials by deterring the public employer from taking discriminatory actions against an employee because of such communication.

Our holding that Williamson County (hereinafter County) is the "public employer" is dispositive of the PEPFA claims against defendants Buford and Frensley, because they were the agents of County rather than Pewitt's employer, and the Act imposes liability only upon the "public employer." Summary judgment on Pewitt's PEPFA claim was properly granted to defendants Frensley and Buford.

With respect to Pewitt's PEPFA claim against defendant Buford, the trial court held that summary judgment was appropriate, because Pewitt was unable to

show that Buford had knowledge of Pewitt's communication with Commissioner Lynch prior to the termination of Pewitt's employment. Because we find that Williamson County rather than Mrs. Buford is the "public employer," it is unnecessary to address this argument with respect to Mrs. Buford. However, since the issue is dispositive of whether the "causal element" of PEPFA has been met for purposes of the action against Williamson County,[4] we will address the issue with respect to Williamson County.

Appellee Buford asserts that she never knew of Pewitt's communication with Clyde Lynch until after Pewitt quit her job at the trustee's office. Therefore, any of Buford's actions which were directed at Pewitt, whether discriminatory or otherwise, could not have been "because" Pewitt communicated with an elected official.

Obviously, the word "because" in T.C.A. § 8-50-603(b) requires that the discriminatory actions of the public employer must have resulted from the employee's communication with an elected official. County asserts, and it appears undisputed in the record, that Mrs. Buford had no actual knowledge that Mrs. Pewitt had communicated with Commissioner Lynch prior to the time Pewitt quit her job at the trustee's office.[5] County argues that in order for liability to be established under PEPFA, the employer must have actual knowledge of the communication with the elected official and act because of that

---

[4] It is necessary because Williamson County is not a natural person and thus can only act through its agents (in this case Lillie Buford). Since the actions of Mrs. Buford constitute the actions of Williamson County, to satisfy the causal element of PEPFA in a suit against Williamson County, it is necessary that plaintiff set forth specific facts which show that Buford acted "because" of Pewitt's communication with Lynch.

[5] In support of this proposition, County cites the deposition of Mrs. Pewitt in which she admitted she did not know for certain whether Buford knew of her communication with Lynch or the TBI, but she (Pewitt) believed that Buford knew of the communication.

10

knowledge. We do not believe that the statute requires such a stringent interpretation. Mrs. Pewitt argues that the alleged discriminatory actions against her occurred because of Mrs. Buford's belief that Pewitt initiated the TBI involvement. The record establishes that Commissioner Lynch contacted the TBI and that Mrs. Pewitt spoke with the TBI at the request and direction of Commissioner Lynch. Although Mrs. Buford may not have had actual knowledge that an elected official had been contacted, it is clear that but for Mrs. Pewitt's communication with Commissioner Lynch, the TBI involvement for which Mrs. Buford allegedly blamed Mrs. Pewitt, would not have occurred.

Although Mrs. Buford denies that she knew of Mrs. Pewitt's involvement with the TBI, there is proof in the record from which a trier of fact could find otherwise. Mrs. Pewitt produced the affidavit of Melissa Tidwell, a secretary at Buford Trucking, who states that shortly after the TBI raided the trustee's office, she heard Mrs. Buford say, "If I find out for sure that it was Judy [who leaked the information], I am going to fire her ass." In her affidavit Mrs. Tidwell states that Mrs. Buford made this statement to her while she (Tidwell) was at work at Buford Trucking, and that Mrs. Buford further said, "'Don't you say anything to anybody about what I said.'" Mrs. Pewitt also produced the deposition of Mrs. Buford in which Mrs. Buford conceded that after the TBI raid, she may have informed some employees of the trustee's office that she believed the "informant" to be an employee of the trustee's office. Buford also admitted in her deposition that she questioned a TBI agent as to "who had sent them [the TBI] to check the office." Finally, Mrs. Pewitt produced the deposition testimony of Mrs. Buford in which Buford admits asking Pewitt how the TBI got Pewitt's phone number to her private line. Mrs. Buford asked Pewitt the question following a phone call which the TBI placed on Mrs. Pewitt's private line to Mrs. Buford.

11

Taking the strongest legitimate view of the above facts in favor of Mrs. Pewitt, and allowing all reasonable inferences in favor of Pewitt, we are of the opinion that there exists a genuine issue of material fact as to whether Buford's actions resulted from Pewitt's communication with Lynch.

County next asserts that summary judgment was appropriate, because Mrs. Pewitt was not "disciplined, threatened with discipline, or otherwise discriminated against . . ." as required by the statute. We must respectfully disagree. Pewitt testified that following the TBI raid on the trustee's office, Mrs. Buford moved her into an office that was not as nice as the previous office, maintained absentee records on her but not other employees, and encouraged other employees to avoid Mrs. Pewitt. Mrs. Buford, on the other hand, states that she kept absentee records on all employees, that Mrs. Pewitt's new office was as nice as Mrs. Pewitt's previous office, and that the move was not in any way intended to discipline Mrs. Pewitt. Construing the evidence in favor of Mrs. Pewitt and allowing all reasonable inferences in favor of her, we think that reasonable minds could differ as to whether, under the facts of this case, the actions of Buford constituted discipline or discrimination. These issues should be resolved by a trier of fact.

Finally, with respect to the elements of PEPFA, County argues that Pewitt's PEPFA action fails, because Pewitt's communication with Lynch was not for a "job-related purpose" as required by T.C.A. § 8-50-602(a). We think this argument is wholly without merit. A communication by an employee of the trustee's office regarding criminal misconduct occurring at the trustee's office, is certainly for a "job-related purpose."

County next asserts that even if Pewitt could establish a prima facie case under PEPFA, County would still not be liable under the Act for a number of

reasons. First, County contends that PEPFA is analogous to 42 U.S.C. § 1983 and argues that caselaw interpreting § 1983 clearly establishes that a county is not liable on a *respondeat superior* or vicarious liability basis for the actions of its agents. While County's interpretation of caselaw construing § 1983 may be correct, we fail to see what relevance this body of law has to PEPFA which provides a state law cause of action entirely separate and distinct from § 1983. Accordingly, County's § 1983 arguments are inapplicable to the case *sub judice*. In its brief, County also argues that PEPFA's treble damages provision is essentially a punitive damages provision, and therefore may not be applied to County. In support of this proposition, County cites *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748 (1981), in which the United States Supreme Court stated that punitive damages should not be awarded against local governments. County argues that, "In common law and civil rights law, it is well established that punitive damages may not be awarded against local governments."

County's argument fails to recognize that an action brought pursuant to PEPFA is neither a common law action nor a federal civil rights action, but rather a statutory cause of action specifically provided by the Tennessee Legislature. In our opinion *City of Newport* is inapplicable as well as distinguishable from the case at hand. *City of Newport* is a case decided under 42 U.S.C. § 1983, a federal civil rights statute which makes no mention of punitive damages. *See* 42 U.S.C. § 1983 (1994). PEPFA, on the other hand, is a state statute which, under a very narrow set of circumstances, *specifically authorizes* an award of treble damages against a local government.[6]

---

[6]This conclusion is supported by *City of Newport* in which the Court, in a footnote, stated, "The general rule today is that no punitive damages are allowed [against a local government] *unless expressly authorized by statute*."

Finally County argues that even if Appellee Buford did discriminate or discipline Mrs. Pewitt for her communication with Lynch, such discrimination would constitute a willful act of misconduct beyond the scope of Buford's authority as trustee; therefore, § 29-20-310(a) of the Tennessee Governmental Tort Liability Act (TGTLA) prevents the imposition of liability against County. In our opinion, this argument is without merit, because it is contrary to well established principles of statutory interpretation as well as the purpose of PEPFA.

TGTLA section 29-20-310(a) provides:

> *Determinations to be made by court - Restrictions on claims against employees . . .* (a) The court, before holding a governmental entity liable for damages, must first determine that the employee's or employees' act or acts were negligent and the proximate cause of plaintiff's injury, that the employee or employees acted within the scope of their employment and that none of the exceptions listed in § 29-20-205 are applicable to the facts before the court.

T.C.A. § 29-20-310 (a) (Supp. 1994). PEPFA can impose liability upon a local government for the willful or intentional misconduct of the government's agents, while T.C.A. § 29-20-310 (a) requires negligent acts of an employer within the scope of employment to impose liability upon the governmental entity. *See Jenkins v. Loudon County*, 736 S.W.2d 603, 608 (Tenn. 1987). Despite County's arguments to the contary, we do not think § 29-20-310 (a) either conflicts with PEPFA or operates to bar a PEPFA cause of action against a local government. By enacting PEPFA and § 29-20-310(a), the Legislature merely removed sovereign immunity under two separate circumstances. We think both statutory provisions are valid, and that each can be applied without conflicting with the

---

453 U.S. at 261,101 S.Ct. at 2756, n. 21.

14

other.[7]

This conclusion is supported by T.C.A. § 1-3-103 (1994) which states, "If provisions of different titles or chapters of the Code appear to contravene each other, the provisions of each title or chapter shall prevail as to all matters and questions growing out of the subject matter of that title or chapter." T.C.A. § 1-3-103 guides the courts of this state to resolve conflicts among Code provisions so that "each provision prevails as to subjects within the special purview of the relevant chapter or title." *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986). We think, the facts of this case are within the "special purview" of PEPFA rather than encompassed by the more general provisions of The Tennessee Governmental Tort Liability Act.

To hold that § 29-20-310(a) of the TGTLA bars the PEPFA suit against County because the alleged discrimination by Buford was willful or intentional would not only run counter to rules of statutory construction, but would also nullify the protection afforded to public employees by PEPFA. If a public employer could escape liability under the Act simply because the actions of the employer (or the employer's agent) were willful or intentional, then the protection as well as

---

[7]It should be noted that even if we did perceive an "irreconcilable conflict" between the TGTLA and PEPFA, the TGTLA would still not bar the plaintiff's PEPFA action, because under the doctrine of implied repeal the more specific provisions of PEPFA, which impose liability upon a county (as a "public employer") in a very narrow set of circumstances, would prevail over the more general immunity provisions of the TGTLA. As our Supreme Court stated in *State Dep't of Revenue v. Moore*, 722 S.W.2d 367 (Tenn. 1986):

> The rule may be stated that where two acts conflict and cannot be reconciled, . . . a "special statute or a special provision of a particular statute controls a general provision in another statute or general provision in the same statute."

*Id.* at 374 (quoting *Strader v. United Family Life Ins. Co.*, 218 Tenn. 411,417, 403 S.W.2d 765,768 (Tenn. 1966)).

the cause of action afforded a public employee by PEPFA, would be nullified. If a public employer subjects an employee to discipline or discrimination *because* of an employee's communication with an elected public official, then such discipline or discrimination will always be intentional or willful.[8] Therefore, barring a PEPFA action on the ground that the underlying conduct on which the action is based was willful or intentional, would effectively "gut" PEPFA. We think such a result would be clearly at odds with the intention of the Legislature in enacting PEPFA.

In addition to bringing a PEPFA action against the defendants, Pewitt brought a retaliatory discharge action. Since Pewitt was not fired but rather voluntarily quit her job at the trustee's office, she argues that Buford's actions toward her constituted a constructive discharge, and that such discharge was in retaliation for Pewitt's communication with Lynch. The case of *Montgomery vs. Mayor of City of Covington*, 778 S.W.2d 444 (Tenn. App. 1988), is dispositive of Pewitt's retaliatory discharge action against County. In *Montgomery*, this Court was presented with the question of whether the TGTLA barred a retaliatory discharge action against the City of Covington. We answered this question in the affirmative stating,

> An action for retaliatory discharge is by its very nature an action based on the intent of the employer to discharge the employee . . . . Therefore this would not be a negligent act or omission and immunity [under the TGTLA] would not be removed at all. Thus the city enjoys complete immunity from this action.

*Id.* at 445. Applying *Montgomery* to the case *sub judice*, we conclude that the TGTLA provides County with complete immunity from Pewitt's retaliatory

---

[8]It is difficult to conceive of a situation in which an employer could negligently, (recklessly, etc.) discriminate against an employee because of an employee's communication with a publicly elected official.

16

discharge action. Thus, the trial court properly granted County's motion for summary judgment on the retaliatory discharge claim.

The trial court's grant of summary judgment to Appellees Buford and Frensley on the retaliatory discharge action was also proper. Although the TGTLA generally does not bar an action against a government employee who acts willfully or intentionally (and therefore outside of the employee's scope of authority), for an action to lie against the employee personally, the employee must obviously be sued personally. Since Pewitt's retaliatory discharge action against Frensley and Buford is brought against them in their capacities as trustees for Williamson County rather than as individuals, the trial court's grant of summary judgment to Buford and Frensley on the retaliatory discharge claim was proper.[9]

Finally, the County asserts that Pewitt's claim for statutory damages pursuant to PEPFA is barred by the one year statute of limitations in T.C.A. § 28-3-104 (4) (1994). County argues that since this action was commenced on March 5, 1993, any discriminatory actions which occurred prior to March 5, 1992, would be barred. County cites no authority nor makes an argument concerning this assertion, and we consider it waived. *State ex rel. Dep't of Transp. v. Harvey*, 680 S.W.2d 792, 795 (Tenn. App. 1984); T.R.A.P. 27 (a) (7). In any event, we think the best reasoning in this case is that the alleged discrimination against Mrs. Pewitt was a continuing series of events that merely culminated on March 9, 1992, when Mrs. Pewitt quit her job. Therefore, since at least some of the discriminatory actions occurred within the limitations period, all of the

---

[9]In addition, with respect to Appellee Frensley, Frensley took over the office of county trustee *after* Pewitt quit her job at the trustee's office, and Pewitt never returned to work for, or under Frensley. Therefore, Frensley never, retaliatorily or otherwise, discharged Pewitt.

discriminatory actions are actionable under PEPFA. *See Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992) ("[W]here there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period.").

Accordingly, the order of the trial court granting summary judgment to Williamson County on Pewitt's PEPFA claim is reversed, and the case is remanded for trial on that claim. The order of the trial court in all other respects is affirmed. Costs of the appeal are assessed against appellee, Williamson County.

_____
W. FRANK CRAWFORD, JUDGE

CONCUR:


_____
ALAN E. HIGHERS, JUDGE


_____
DAVID R. FARMER, JUDGE