# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| **KELLOGG COMPANY and**<br>**KELLOGG, U.S.A., INC.,**<br><br>Plaintiffs/Appellants,<br><br>**VS.**<br><br>**TENNESSEE ASSESSMENT**<br>**APPEALS COMMISSION, STATE OF**<br>**TENNESSEE, STATE BOARD OF**<br>**EQUALIZATION; HAROLD S.**<br>**STERLING, SHELBY COUNTY**<br>**ASSESSOR; BOB PATTERSON,**<br>**SHELBY COUNTY TRUSTEE, STATE**<br>**OF TENNESSEE, DIVISION OF**<br>**PROPERTY ASSESSMENTS, and**<br>**SHELBY COUNTY, TENNESSEE,**<br><br>Defendants/Appellees. | )<br>)<br>)<br>) **Shelby Chancery No. 107290-1 R.D.**<br>)<br>) **Appeal No. 02A01-9612-CH-00302**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FILED**

**June 26, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE C. NEAL SMALL, CHANCELLOR

**ALLAN J. WADE**
**BAKER, DONELSON, BEARMAN**
**& CALDWELL**
Memphis, Tennessee
Attorney for Appellants

**JOHN KNOX WALKUP**
**Attorney General and Reporter**
**JOHN J. HANCOCK**
**Assistant Attorney General**
Nashville, Tennessee
Attorney for Appellees Tenn. Assessment Appeals Comm.,
Tennessee State Board of Equalization, and
State of Tennessee Division of Property Assessments

**THOMAS E. WILLIAMS**
**Special Counsel-Shelby County Government**
Memphis, Tennessee
Attorney for Appellees Shelby County, Tennessee,
Bob Patterson, Shelby County Trustee, and
Harold S. Sterling, Shelby County Assessor

**REVERSED AND REMANDED**

**DAVID R. FARMER, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**ALAN E. HIGHERS, J.**

Kellogg Company and Kellogg, U.S.A., Inc. (hereinafter collectively "Kellogg"),

appeal from the judgment of the trial court dismissing their "petition for judicial review" on the ground that the court lacked subject matter jurisdiction. The petition sought review of the decision of the Tennessee Assessment Appeals Commission and the Tennessee State Board of Equalization (Board) that the Shelby County Assessor[1] had properly assessed certain tangible personal property, identified as "Construction In Process" (CIP), owned by Kellogg on the effective date of January 1, 1993. Kellogg paid the taxes under protest. The chancery court dismissed the petition on the ground that Kellogg had failed to first exhaust its administrative remedies before seeking judicial review. The parties now agree, in light of our supreme court's decision in ***Thomas v. State Board of Equalization***, 940 S.W.2d 563 (Tenn. 1997), that the trial court erred in dismissing the petition. It is clear from the parties' briefs that they further do not dispute that this matter is properly before this court for review on its merits and that a remand to the trial court is unnecessary.[2] We agree that Kellogg's petition was improperly dismissed by the trial court and hereby reverse its decision. Furthermore, after review of the merits, we have determined that the taxation of Kellogg was improper. We set forth our reasons below.

Kellogg's petition alleged the improper taxation of its CIP on the basis that prior to May 17, 1993, no specific statute, promulgated rule, regulation or other document existed which specifically mentioned or defined CIP property or authorized its assessment. Kellogg asserted that the county assessor assessed the CIP based upon a written "directive" from the Division of Property Assessments which was contrary to the established policies and procedures of the Board and unsupported by any established Board rule or regulation. It was asserted that this change in policy governing CIP assessment was neither promulgated by the Board nor in accordance with the Uniform Administrative Procedures Act, T.C.A. §4-5-101 *et seq.*, since the rule making was not preceded by notice and a public hearing. Kellogg alleged that, for tax years prior to 1994, Tennessee law did not authorize the taxation of CIP until such construction was completed and placed in service.

---

[1]The remaining Appellees are Bob Patterson, Shelby County Trustee, the Division of Property Assessments and Shelby County, Tennessee.

[2]The brief of the Tennessee Assessment Appeals Commission, the Division of Property Assessments and the State Board of Equalization indicates that although this issue "has been resolved for the purposes of this proceeding," it was being preserved with respect to further appeal.

Kellogg noted that under federal income and state excise tax rules, CIP costs are not capitalized and depreciated until placed in service and maintained that the "long established rule" adopted by the Board follows the federal tax guidelines. It was further asserted that the assessor made no attempt to properly classify personal property which was to comprise CIP and that the Division's directive did not take into account the difficulty in classifying component parts until the time when they are completed and placed in service.

Kellogg further contended that a "significant portion" of the CIP assessed was for labor and freight which "are not capitalized as a part of the depreciable cost of CIP until the constructive personalty is completed and placed in service." Thus, it was asserted that until CIP is functional, labor and freight costs are non-capitalized current expenditures and not personal property. Kellogg also maintained that the assessment of CIP was premature because the component parts of machinery, equipment and real estate are not assessable until completed and placed in service pursuant to generally accepted accounting principles and Board rules. Kellogg therefore sought an adjustment of the depreciation factors for the finished product into which CIP is incorporated to reflect an earlier commencement date for depreciation of that particular item of personalty other than that usually contemplated by current depreciation factors adopted by the Board, if the assessment was upheld.

Finally, Kellogg pointed to the legislature's enactment of T.C.A. § 67-5-903(g),[3] providing for CIP to be valued at 15% of its reported cost, effective January 1, 1994. Kellogg maintained that CIP should therefore not be assessed prior to the effective date or, alternatively, Kellogg asserted that the statute should be construed so as to reduce the valuation basis of CIP to 15% of cost for tax year 1993 as opposed to the 100% that had been assessed. In regard to the latter, Kellogg contended that in light of the statute's requirement that no back assessments relative to CIP were to be made prior to January 1, 1994 and that all taxes collected from such assessments were to be refunded, it was not the legislature's intent to permit valuation of CIP at 100% of cost on only those taxpayers who voluntarily complied with the state's reporting regulations for the 1993 tax year,

---

[3]The statute was enacted May 17, 1993.

or to disregard that tax year in terms of the statute's applicability. Consequently, Kellogg sought a determination from the trial court that the assessment of its CIP property was void as having been made without legal authority or, alternatively, that it was entitled to a reduction in its 1993 assessment valuation of CIP to 15% and that labor, freight and other expenditures not related to the acquisition costs of CIP were to be excluded from its value. Kellogg also sought a refund of all or a portion of the personal property taxes "erroneously assessed and collected" for tax year 1993.

Kellogg amended its complaint to assert that § 67-5-903(g) is discriminatory on its face and mandates unequal treatment under the law. It was also alleged that Appellees' assessment of CIP prior to May 17, 1993 violated Article 2, § 28 of the state constitution since the legislature "has not established the ratio of assessment to value of [CIP] so that it will be equal and uniform throughout the state nor has the Tennessee General Assembly directed the manner in which the value of [CIP] prior to May 17, 1993 will be ascertained and the Tennessee General Assembly has not defined the property constituting [CIP]."

In answering the petition, Appellees[4] asserted that the taxation of CIP "was well within the contemplation of statutes relating to the assessment of tangible personal property including § 67-5-901 *et seq.*" They acknowledged that CIP "was not specifically enumerated in various manuals or regulations prior to 1993," but argued that it was "included sufficiently within the definitions and context of property that the Tennessee Constitution requires to be taxed." Appellees further admitted that the Board followed the federal tax principle that the cost of personalty is not capitalized and depreciated until it is operational and placed in service.

A hearing was held on September 20, 1995 before the administrative law judge (ALJ) who made the following factual findings:

> In tax year 1993, the taxpayer timely filed a tangible personal
> property schedule with the Assessor on the prescribed form. This
> schedule was accompanied by a letter from the taxpayer stating (in

---

[4]The answer was filed on behalf of appellees Shelby County, Tennessee, the Shelby County Assessor and the Shelby county Trustee only.

4

relevant part) as follows:

> To comply with instructions issued by the Shelby County Assessor's Office, we have included Construction in Process (C-I-P) of $14,165,589 in the $21,279,289 reported as "Raw Materials and Supplies" in Group 8. We hereby protest the inclusions of the C-I-P as reportable property and reserve the right to raise any and all issues pertaining to the assessment of this property.

> The taxpayers did in fact complain to the Shelby County Board of Equalization that the C-I-P portion of the subject account was unlawfully assessed. After the county board refused to grant relief, the taxpayer filed this appeal.[5]

The ALJ upheld the assessment of Kellogg's CIP, finding "no legal basis for exemption of such property from ad valorem taxation.". The ALJ found no merit in Kellogg's claim of inequitable assessment, ruling that although some taxpayers may have escaped CIP assessment, such did not warrant the setting aside of a proper assessment. The ALJ further held that T.C.A. § 67-5-903(g) was limited to back assessments of CIP with respect to tax year 1993 and that 100% of reported cost was the proper valuation of CIP, irrespective of its treatment for federal income or state excise tax purposes. Thereafter, the Assessment Appeals Commission issued its official certificate certifying the ad valorem assessment of Kellogg's property.

We perceive the sole issue on appeal as whether the appellees' assessment of Kellogg's CIP property for tax year 1993 was proper. Resolution of this issue necessarily involves statutory interpretation. T.C.A. § 67-5-903(g)(1)-(2) states as follows:

> Tangible personal property which the taxpayer treats as construction-in-process (hereinafter "CIP") for federal income tax purposes as of the assessment date may be reported in the taxpayer's schedule filed with the assessor at fifteen percent (15%) of its cost as reported for federal income tax purposes. Qualified pollution control property shall be valued as provided in § 67-5-604, notwithstanding its state of completion.

> No back assessments of CIP, as the term is used in subdivision (g)(1), shall occur prior to January 1, 1994. If back assessments have occurred involving CIP, those assessments shall be

---

[5] The record indicates that Kellogg's property was appraised for tax year 1993 at $52,136,200 with an ad valorem assessment of $15,640,860.

5

voided and all taxes paid shall be refunded to those taxpayers who have an action or claim pending before assessing authority or court on the CIP issue.

The premier rule of statutory construction is to ascertain and give effect to the legislative intent. In ascertaining this intent, we are to look to the general purpose to be accomplished by the legislature. *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn. 1975). The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of the language. *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977); *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn. App. 1983). This court is to reconcile inconsistent or repugnant provisions of the statute and to construe the statute so as to avoid an interpretation that would render any of the language superfluous, void or insignificant. We are to give effect to every word, phrase, clause and sentence of the act in order to derive the legislature's intent. Each section is to be construed so that no section will destroy another. *Dingman v. Harvell*, 814 S.W.2d 362, 366 (Tenn. App. 1991).

The record reveals that Kellogg served the appellees with a request for admissions, including that "[p]rior to May 17, 1993, there was no statute, regulation, administrative rule, directive, or other authority authorizing or directing the taxation of "[CIP]." Appellees "[d]enied as stated" the request and answered as follows:

> Tenn. Code Ann. § 67-5-901 provides that tangible personal property not in use shall nevertheless be classified according to its immediate most suitable economic use determined in part by "immediate past use, *if any*" (emphasis added). Tenn. Code Ann. § 67-5-903 provides that business taxpayers shall report to the assessor for assessment, tangible personal property which is "used *or held for use* in such business" (emphasis supplied). These statutes were in effect prior to May 17, 1993, and they remain in effect today.
>
> Rule 0600-5-.11 of the State Board of Equalization sets forth the standard reporting form for business tangible personal property and requires that property be listed if it is used *or held for use* by the reporting business. This rule has been in effect since at least 1989, and this form has been furnished annually to taxpayers for many years, and included instructions which also required reporting of property used or held for use. In addition, a special notice to taxpayers was sent with the 1993 schedules in late 1992 or early

6

1993, which contained specific definitions and directions concerning CIP.[6]

The appellees admitted that prior to May 17, 1993, there were no statutes, regulations, or administrative rules specifically defining CIP but denied that there were no "directives" defining such prior to that time. The appellees denied that the Board had failed to promulgate any rules regarding the taxation of CIP and cited rules 0600-5-.01, 0600-5-.06 and 0600-5-.11. Finally, Appellees denied that prior to May 17, 1993, there was no statute directing the manner of valuing CIP, stating that T.C.A. § 67-5-903 "provided standard methods of valuation for all tangible personal property whether used *or held for use,* and the statute provided that all property not listed in another group be listed in one of the several groups by type or be listed in Group 1 of the standard schedule . . . ."

The record also includes a letter dated August 24, 1993 from the Board's executive secretary to the state attorney general requesting the latter's opinion "concerning Public Chapter 323 of 1993, which creates special property tax assessment provisions for tangible personal property construction-in-process (CIP)." It reads as follows, as here pertinent:

> Tangible personal property "used or held for use" in business is reported annually by businesses using a schedule provided by the assessor and approved by the state Division of Property Assessments (DPA). . . . Under rules of the State Board (Chapter 0600-5), taxable value is presumed (in the absence of better evidence) to be the

---

[6]The "special notice" mailed to taxpayers for tax year 1993 stated, as here relevant:

**SPECIAL NOTICE; CONSTRUCTION IN PROCESS (CIP)**

As of January 1, 1993, Tennessee law requiring the assessment of tangible personal property construction in process has not changed, and taxpayers are instructed to include such property in Group 8 of the Tangible Personal Property Schedule unless a nonstandard value is being claimed. . . .

Tangible personal property construction in process means tangible personal property assets or groups of assets during a period of construction or assembly prior to their being committed to use, reflecting all direct and indirect costs as of the assessment date January 1). This would include equipment on location which has not yet been placed into operation.

If the legal assessment status of CIP is later changed for tax year 1993, you will be permitted to amend your schedule at least until September of 1994.

taxpayer's original cost less straight line depreciation, with the amount of standard depreciation based on categories of property established by the legislature. *Neither the statutes (prior to 1993), the rules, nor the state constitution mention CIP, and in 1991, confusion arose concerning its assessment status. CIP is generally understood to mean personalty which has a taxable situs at the taxpayer's place of business as of the assessment date but which is not yet in operation. CIP can range from unopened crates of ready-to-use equipment to complex arrays of unassembled or partly assembled components, and the final cost may include substantial labor costs for installation and assembly.*

When asked about the assessment statutes of CIP, state assessment staff found it to be property "held for use" in business and therefore assessable, and DPA issued instructions which accompanied schedules mailed to taxpayers for tax years 1992 and 1993. On the theory that CIP was not yet in operation and therefore not depreciable, the instructions directed taxpayers to report CIP in a nondepreciable category reserved for raw materials and supplies, which would result in a standard value equal to 100% of the taxpayer's cost of acquisition. It appears some taxpayers have never distinguished CIP from operating property and simply reported it with operating property, while others have not reported it. Some taxpayers, according to Tennessee Association of Business, may have been misled by the State Board rule which defines "original cost" for purposes of personalty assessment to mean gross capitalized cost before depreciation. CIP costs are not capitalized for federal income purposes. Several jurisdictions back assessed nonreporting taxpayers for CIP in reliance on the staff interpretations. (Emphasis added.)

The letter concludes by setting forth the "staff" interpretation of § 67-5-903(g) to mean that the 15% valuation provisions were not to become operative until tax year beginning January 1, 1994 and for years prior CIP was reportable at 100% of cost, including tax year 1993, "although omitted or under assessed CIP [could] not be back assessed for those years . . . ."

As heretofore set forth, Appellees admit that prior to May 17, 1993, there were no statutes, regulations or administrative rules specifically defining or addressing CIP property. They, however, deny there were no "directives" regarding the matter prior to this time. They rely specifically on T.C.A. § 67-5-901 which concerns the "classification" of all tangible personal property for purposes of taxation to include "tangible personal property which is not in use." The statute provides that such property is to be classified according to its immediate and most suitable economic use taking into account certain identified factors. They further rely upon § 67-5-903(b) which provides that business taxpayers are to report for assessment tangible personal property "used, or held for use, in the taxpayers' business or profession." Appellees maintain that the foregoing

8

statutes along with Art. 2, § 28 of the state constitution, providing that "all property, real, personal or mixed shall be subject to taxation . . . .",  lend clear indication that CIP was subject to taxation in 1993.  Appellees further assert that the instructions issued to taxpayers for tax year 1993 did not change existing law but were merely utilized to clarify the status of the law as it then existed.  They state that the schedule on which taxpayers were to report their tangible personal property did not identify a specific category in which to list CIP property.  Therefore, the instructions to taxpayers merely identified the category in which CIP property was to be included.

In *Sherwood Co. v. Clary*, 734 S.W.2d 318 (Tenn. 1987), our supreme court confronted the issue of the constitutionality of T.C.A. § 67-5-901(3)(A) with respect to the assessment of non-business tangible personal property.  Therein, the court addressed the fact that Art. 2, § 28  was "extensively revised by an amendment adopted in 1972." *Sherwood Co.*, 734 S.W.2d at 320.  The court stated:

> [T]he Tennessee Constitution prior to the amendment prohibited classification for tax purposes of property according to its use.  It required all property to be taxed, except for certain exceptions or exemptions which the Legislature might authorize, and mandated that all property should be taxed according to its value so that taxes would be equal and uniform throughout the state . . . .
>
> All of this was changed by the 1972 amendment, which made all property in the state subject to the taxing power of the Legislature but authorized classifications of real property and of tangible and intangible personal property.  With respect to real property and tangible personal property the amendment provided for fixed ratios of assessment to value in each classification and required that every taxing authority apply the same tax rate to all property within its jurisdiction.

*Id*.

Upon concluding that the statute did not violate the equal protection clause of the Fourteenth Amendment, the court held:

> The general assembly concluded that no appreciable revenue could be obtained by an attempt to tax household goods and chattels or other nonbusiness tangible personal property.

In our opinion the general assembly was not constitutionally required to attempt to administer and maintain an impractical system of taxation, and it was given very broad discretion with respect to determining the value and definition of property in each of the authorized classifications or subclassifications.

As previously stated, the earlier constitutional mandate that all property be taxed was repealed by this amendment. Instead all property was made subject to the taxing power, but the amendment did not compel or mandate that the general assembly exhaust that power. It gave general directions concerning classifications and assessment ratios, and if the general assembly exercised its taxing power through the use of these classifications, the ratios of assessment to value were required to be used.

*Id*. at 321-22.

In the present case, the legislature chose for the first time to specifically address CIP property by the enactment of § 67-5-903(g). As the legislature has chosen to specifically address this particular kind of property by the enactment of subsection (g), we cannot conclude that the meaning of CIP property equates merely to property that is "held for use."[7] In this respect, we note that Board rule 0600-5-.01 as amended defines CIP property as "tangible personal property which as of the assessment date is undergoing construction, assembly, or installation prior to being committed to use." Certainly, this definition is more limiting in nature than that which merely describes property "held for use."

T.C.A. § 67-5-1302(d) provides as follows:

The commission shall recognize specific valuation for construction-in-process ("CIP") tangible personal property in a manner consistent with that provided for locally assessed property under § 67-5-903(g)(1).

The state board of equalization is directed to prepare and adopt rules and regulations for the administration and taxation of CIP pursuant to this section and § 67-5-903, and communicate such rules and regulations to taxpayers to ensure accurate and timely compliance by taxpayers.

The record makes clear, and there is really no dispute, that the Board first adopted rules specifically

---

[7]As indicated by the letter from the Board's executive secretary, prior to this time, there was only a "general understanding" of the meaning of CIP.

defining CIP property, as well as setting forth a standard for valuation, by amendment to its former rules which became effective October 31, 1994. We conclude that although CIP was certainly subject to the taxing power of the legislature prior to and including tax year 1993, it was not the legislature's intent that it be so taxed until its enactment of subsection (g).

We note that in answering the Board's question regarding the assessment status of CIP for tax year 1993 in light of the legislature's enactment of Public Chapter 323, the attorney general, upon interpreting the statute, agreed that for tax year 1993 CIP should be assessed at 100% of cost. The attorney general reasons that since CIP is not expressly made exempt from taxation and since it is a species of tangible personal property, it must be taxable. The attorney general's opinion further states: "[t]he report of the tax study committee makes clear the legislative intent. The legislature was well aware that the Act would allow no back assessments while also limiting refunds to pending claims. The legislature was likewise well aware that before the effective date of the Act, CIP was reportable at 100% of cost." We emphasize here that the legislature's awareness of the Board's assessment of certain tangible personal property does not necessarily indicate either legislative approval or proper authorization.

The statute in question does not address assessments of CIP property prior to January 1, 1994, but only back assessments. As it expressly voids all back assessments prior to January 1, 1994, we agree with Kellogg's position that the Board's assessment of Kellogg's CIP property is likewise void. We hold that Appellees were without proper authority to assess such property until January 1, 1994, in accordance with the statutory mandate of § 67-5-903(g). Public Chapter 323 expressly states, in part, "[f]or the purpose of developing, promulgating, and communicating rules and regulations, this act shall take effect upon becoming a law, the public welfare requiring it. For all other purposes, including assessments, it shall take effect at the beginning of the assessment year beginning after this act becomes a law, the public welfare requiring it."

We do not believe our decision runs counter to any of the statutory provisions regarding the taxation of property. We are aware that under T.C.A. § 67-5-101, "[a]ll property, real and personal, shall be assessed for taxation . . . except such as is declared exempt . . ., or unless

otherwise provided." However, the real issue here clearly concerns the timing at which property identified as CIP is to be assessed and not whether it is to be taxed. For the reasons herein expressed, we hold that such property could not properly be assessed earlier than the time at which it was completed and placed in service until the legislature's enactment of § 67-5-903(g) which specifically provides for a different time (by acknowledging for the first time a separate and distinct category of personal property identified as CIP).

The judgment of the trial court is hereby reversed and this cause remanded thereto for further necessary proceedings. Costs are assessed against the appellees, for which execution may issue if necessary.

_____
FARMER, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
HIGHERS, J.

12