IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2019 Session

## STATE OF TENNESSEE v. ROBERT ELIJAH OXENDINE

**Appeal from the Circuit Court for Perry County**
**No. 2017-CR-18     Michael E. Spitzer, Judge**

_____

### No. M2019-00288-CCA-R3-CD

_____

Robert Elijah Oxendine ("Defendant") pled guilty to two counts of vehicular homicide and one count of improper passing. Following a sentencing hearing, the trial court sentenced Defendant to an effective four-year sentence with one year of incarceration and the balance on probation. Defendant claims that the trial court abused its discretion in sentencing him to split confinement rather than full probation and by using elements of the offense as a factor to enhance the sentence. We affirm the trial court's imposition of a four-year sentence, but we reverse the court's imposition of split confinement and remand for entry of amended judgments of conviction placing Defendant on probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. TIMOTHY L. EASTER, J., not participating.

Gregory D. Smith (on appeal), and Ed DeWerff (at plea), Clarksville, Tennessee, for the appellant, Robert Elijah Oxendine.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Kim R. Helper, District Attorney General; and Stacey B. Edmonson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural History

On May 22, 2019, Defendant was indicted by the Perry County Grand Jury for two counts of vehicular homicide, three counts of reckless homicide, and one count of improper passing.

### *Plea Submission Hearing*

After a thorough plea colloquy in which the trial court explained and Defendant waived his rights, Defendant pled guilty to two counts of Class C felony vehicular homicide and one count of Class C misdemeanor improper passing with the length and manner of service of the sentence to be determined by the trial court. The State presented the following factual basis for the plea:

> [T]he proof would be that [Defendant] was to appear for first formation at the [National] Guard at 7:30 a.m. on that date [December 10, 2016]. That he had contacted his squad leader at approximately 6:50 a.m. to inform [him] that he was going to be late. He was having car trouble. At that point the testimony would be it's unknown exactly what time [Defendant] left his home in Clarksville but at approximately 8:30 a.m., he was traveling south on Highway 13 on route to the National Guard Armory.
>
> The proof would be through witnesses, Zackary Byrd and Kayla Parrish[,] that [Defendant] was traveling behind Zackary Byrd in the area of Mud Springs Hollow. He began to pass the vehicle operated by Zackary Byrd which was in a curved area of the roadway and was marked by two painted lines as a no passing zone. At that point as the vehicle crossed over the double yellow line, the testimony from Mr. Byrd would be he observed [Defendant's] vehicle attempt to leave the northbound lane in order to avoid any sort of crash. He was traveling approximately 71 miles-per-hour per Lieutenant Colbet who did the crime s[cene] reconstruction.
>
> The vehicle being driven coming in the opposite direction of [Defendant] was driven by Theresa Oliver[,] and her husband, Andrew Oliver[,] was a passenger in the vehicle. Their vehicle was struck. Both M[r]s. Oliver and Mr. Oliver were deceased after the accident.
>
> [Defendant] admitted to police to speeding and crossing a double yellow line at the time of the accident.

After accepting the guilty pleas, the trial court set a sentencing hearing.

*Proof at Sentencing Hearing*

Seven of the victims' family members, including two of their children, testified for the State. They explained the impact the deaths had on them and their families and what they had done to cope with their loss. Every family member asked that Defendant be sentenced to incarceration.

The State also introduced the presentence report as an exhibit. The report showed that Defendant had no prior criminal record, that he graduated from high school, that he worked as a tool and die maker at Hankook Tire earning $24.63 per hour, that his mental and physical health were good, and that he did not drink alcohol or use illegal drugs. He had a good childhood and a good relationship with his family and girlfriend.

Christopher Hensley, a full-time National Guard noncommissioned officer (NCO), who was Defendant's platoon sergeant at the time of the accident, testified concerning Defendant's amenability to correction. He said Defendant had two minor disciplinary issues, neither of which required a written report. One issue involved proper shut-down procedures for a fuel tanker. Defendant was also disciplined for playing music. NCO Hensley said Defendant was "very receptive" to correction and never gave him any "negative feedback." NCO Hensley said that there were forty-five soldiers in his platoon and that Defendant was in the top five. He said that, except for the day of the accident, Defendant had always been punctual and that Defendant would have been docked one-half day's pay, about one hundred and fifty dollars, if he had been late.

Defendant confirmed the information in the presentence report. He testified that he was twenty-two years of age, and that in addition to serving in the National Guard, he worked as a tool and die technician. He said that he had graduated from high school, had never been fired from a job, and that he had no misdemeanor or felony convictions. He lived in Clarksville and estimated that it was a ninety-minute drive to the armory. He said he was scheduled to report for guard duty at 7:30 a.m. on the morning of the accident. Defendant had trouble starting his car and called the armory to let them know he was running late.

The presentence report included Deputy Gottfried Koblitz's report concerning his investigation of the accident. According to Deputy Koblitz, Defendant provided the following description of the accident:

> [Defendant] advised he had come through Lobelville. He noted the speed
> limit was 55 miles per hour and the vehicle in front of him was traveling 40

miles per hour. [Defendant] advised he saw he was in a "passing zone" and began to pass the vehicle. Approximately "half way up the road," the vehicle began to "speed up." He said he was passing the other vehicle as he entered the curve. As he was in the curve, he attempted to enter "the other lane" (southbound lane) and the impact occurred. [Defendant] said he remembered [the victims' vehicle] "swerved" over toward him [prior to the impact]. He commented he was unable to react.

*Argument of Counsel at Sentencing Hearing*

At the conclusion of the proof, the trial court stated that it would "like to hear from both sides concerning enhancement or mitigating factors." The State responded:

Your Honor, in preparing for this hearing this morning, I had an opportunity to walk through the enhancement factors myself. It would seem that the only . . . enhancement factors . . . that apply in this case are factors which themselves are elements of the crime. We have, for example, serious bodily injury. We have a large amount of damage. We have more than one victim, but as [Defendant] has pled to two separate counts, those don't apply, and as I said, this is a vehicular homicide case so certainly serious bodily injury is inherent in the charges themselves, Your Honor.

The State continued:

But I think the State's case today rests solely on [Tennessee Code Annotated section 40-35-103 [(1)(B)] where confinement is necessary to avoid depreciating the seriousness of the offense[.] It's particularly suited to provide an effective deterrence to others likely to commit [a] similar offense. Your Honor, there's no way around it. They're two citizens of Perry County, two brothers and sisters, two sons and daughters, two grandparents, two aunts and uncles that are no longer here. To say that speeding is a small offense or to say that improper passing is nothing more than a traffic citation might be true but what brings us today is, unfortunately, the reason why we have those laws in the first place because they are not followed and people die. It might seem small, and obviously nobody here is contending that [Defendant] did this intentionally, but it's the State's position that such a reckless disregard for the rules, which inevitably ended in the loss of two people's lives, warrants a period of incarceration.

Defendant argued, quoting the following from *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981), that:

> "if probation is to be denied because of the nature of the offense, it would have to be clear that the criminal act, as committed, would be described as especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree."

Defendant also asked that the trial court to consider the six factors set out in *State v. Electroplating, Inc.,* 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Defendant stated that the proof showed that he was amenable to correction, had no prior criminal record, had a favorable social history, and that his physical and mental health were good. Defendant asked that his sentence be served on probation.

*Trial Court's Findings and Sentence*

Near the conclusion of the sentencing hearing, the trial judge made its findings and imposed the sentences, which are quoted below in full:

> The [c]ourt's looked at the enhancement and mitigating factors. I've listened to each one of you. It's true this is a tough case. A horrific accident for the family. Great loss for the family. We've got a Defendant here who generally otherwise has been productive in the community and has close ties, and done well. This day, not necessarily by choice . . . he was late because of his car but he was running late, and he knew he was gonna be docked pay. He wanted to get there in time, and he did so at the risk -- a risk of two lives. So it's a very hard and difficult case to consider.
>
> When you look at enhancement factors and mitigating factors, they're almost not there on either side. It's true. For enhancement factors, there w[ere] personal injuries, great amount of loss with two lives taken[,] and beyond that you have pretty much [a] difficult time looking at reasons to enhance the sentence. And for mitigating factors, even there you have difficult time mitigating because what we have here is a young man who has a clean record but beyond that, there's not a lot you can talk about.
>
> . . . [C]onsecutive sentence is not applicable so I wouldn't need to discuss that, but when you look at probation considerations, [c]ounsel's done a great job defending his client here and not trying to go overboard in terms of wanting to, you know, have everything wiped clean but for probation, when you're looking at just strict probation, the [c]ourt looked at

- 5 -

the pre[-]sentence report, and I see excessive speed. I see a car that actually went over into the grass when it began to pass, obviously in a hurry to get there. So I have some concerns there in terms of probation but by the same token, this young man's life is ruined a good bit by knowing what he's done, and he's going to carry that with him from here on out. So I looked at probation factors and considered each and every one of them.

What the [c]ourt's gonna do on count [one] is sentence the Defendant to four years. Count [two], four years, of course concurrent, and have a split sentence pursuant to 40-35-306[(a)]. Time to serve would be one year in the Perry County jail, and the balance on probation and a condition of probation will be that [Defendant] at least three times per year during the period of probation speak to 10th, 11th and 12th grade students in various schools, three per year for his choice on what this means to him and what impact it's had on his life and to encourage young people not to speed, to be particularly careful about passing on curves. And the sentence could begin on March 1.

Defendant timely appealed.

## Analysis

Defendant claims that the trial court abused its discretion by sentencing him to split confinement rather than full probation and by using elements of the offense as "sentencing enhancers." The State argues that "the trial court imposed a sentence that was presumptively reasonable and Defendant has failed to overcome the presumption."

### Standard of Review

A trial court's within-range sentencing decisions, if based upon the purposes and principles of sentencing, are reviewed under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "*Bise* specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013) (citing *Bise*, 380 S.W.3d at 698-99); *see also State v. Trent*, 533 S.W.3d 282, 292 (Tenn. 2017). When a qualified defendant seeks an alternative sentence and the trial court fails to articulate the reasons for denying the alternative sentence, the "abuse of discretion standard with a presumption of

reasonableness" does not applying on appeal. *Pollard*, 432 S.W.3d at 861; *Bise*, 380 S.W.3d at 705-06. In such case, an appellate court can either conduct a de novo review to determine whether there is an adequate basis for denying probation; or (2) remand for the trial court to consider the requisite factors in determining whether to grant probation. *Pollard*, 432 S.W.3d at 864.

*Purposes and Principles of Sentencing*

Tennessee Code Annotated section 40-35-102, states that "[t]he foremost purpose of [the Tennessee Criminal Sentencing Reform Act of 1989] is to promote justice, as manifested by [section] 40-35-103." Subsection 40-35-102(3) (2016) provides:

> (3) Punishment shall be imposed to prevent crime and promote respect for the law by:
>
> > (A) Providing an effective general deterrent to those likely to violate the criminal laws of this state;
> >
> > (B) Restraining defendants with a lengthy history of criminal conduct;
> >
> > (C) Encouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants; and
> >
> > (D) Encouraging restitution to victims where appropriate[.]

Tennessee Code Annotated section 40-35-103(1) (2016), which lists certain principles to be applied to implement the purposes of sentencing, provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> > (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> >
> > (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

At the conclusion of the sentencing hearing, the trial court "shall first determine the appropriate range of sentence." Tenn. Code Ann. § 40-35-210(a) (2016). Subsection 40-35-210(b) (2016) provides:

(b) To determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant, the court shall consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2016).

*Alternative Sentence*

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Gregory Tyrone Dotson*, No. M2018-00657-CCA-R3-CD, 2019 WL 3763970, at *10 (Tenn. Crim. App. Aug. 9, 2019) (citing *State v. Fields*, 40 S.W.3d 435 (Tenn. 2001)).

Tennessee Code Annotated sections 40-35-102(5) and (6)(A) provide:

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

(6)(A) A defendant who does not fall within the parameters of subdivision (5), and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary; however, a defendant's prior convictions shall be considered evidence to the contrary and, therefore, a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing[.]

Tenn. Code Ann. § 40-35-102(5), (6)(A) (2016).

A sentence of split confinement is listed as a sentencing alternative in Tennessee Code Annotated section 40-35-104(4). *State v. Jeannie Hudson*, No. E2001-00377-CCA-R3-CD, 2002 WL 264625, at \*3 (Tenn. Crim. App. Feb. 19, 2002), *perm. app. denied* (Tenn. July 1, 2002). Split confinement is a sentence involving incarceration under Tennessee Code Annotated section 40-35-102(5). *See* Tenn. Code Ann. § 40-35-306 (2016), Sentencing Comm'n Cmts ("split confinement or 'shock probation' is of value in combining both incarceration and rehabilitation as part of a sentencing program"); *see also Ray v. Madison Cty., Tennessee*, 536 S.W.3d 824, 833 (Tenn. 2017) (stating that a split confinement sentence is an alternative sentencing option that combines incarceration and rehabilitation).

*Full Probation*

Tennessee Code Annotated section 40-35-303(a) provides:

(a) A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213(a)(2), § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003,

- 9 -

§ 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

(b) A court shall have authority to impose probation as part of its sentencing determination at the conclusion of the sentencing hearing. There shall be no petition for probation filed by the defendant and *probation shall be automatically considered by the court as a sentencing alternative for eligible defendants*; provided, that nothing in this chapter shall be construed as altering any provision of present statutory or case law requiring that the burden of establishing suitability for probation rests with the defendant.

(c)(1) If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part of the sentence and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

Tenn. Code Ann. § 40-35-303(a) (emphasis added).

Probation is "a privilege" or "an act of grace" which may be granted to an accused who is eligible and "worthy of this largesse." *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974). A defendant who is statutorily eligible for probation pursuant to Tennessee Code Annotated section 40-35-303(a) has the right to a full and fair evidentiary hearing[,] and the right to all the procedural requirements contained in or necessarily contemplated by the statutory scheme." *Id* at 619-20.

Construing Tennessee Code Annotated sections 40-35-102(5) and -102(6)(A) in *pari materia* with Tennessee Code Annotated section 40-35-303(a), leads us to conclude that a trial court should first determine whether a statutorily eligible defendant who is favorable candidate for probation carried his or her burden of establishing suitability, before denying full probation and imposing an alternative sentence involving incarceration. *See State v. Tammy Marie Harbison*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907, at *6 (Tenn. Crim. App. Feb. 12, 2016) (holding that the trial court erred by denying full probation and imposing a sentence of probation following six months in incarceration because there was "no substantial evidence in the record which would support the denial of probation"), *no perm. app. filed*; *see also State v. James L. Partin*, No. E2001-02254-CCA-R3-CD, 2002 WL 2029570, at *6 (Tenn. Crim. App.

Sept. 5, 2002) (stating that full probation "must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible"), *no perm. app. filed.*

This construction is consistent with the reasoning of decisions involving other alternative sentences. For example, in a case in which a defendant sought an alternative sentence of community corrections after the trial court denied probation, this court reversed the trial court's imposition of a "community corrections sentence [] combined with a period of continuous confinement." *State v. Byrd*, 861 S.W.2d 377, 382 (Tenn. Crim. App. 1993). The *Byrd* court concluded that the defendant was "an eligible and appropriate offender" seeking a community corrections sentence and that "[n]one of the applicable sentencing guidelines or purposes suggest that her community corrections sentence should be combined with a period of continuous confinement." *Id.* at 381-82.

*Favorable Candidate for Probation*

Vehicular homicide under Tennessee Code Annotated section 39-13-213 (a)(1) is a Class C felony. Tenn. Code Ann. § 39-13-213 (b)(1) (2016). It is an offense that the legislature has deemed eligible for an alternative sentence. Defendant does not fall under the parameters of Tennessee Code Annotated section 40-35-102(5) for offenders "given first priority regarding sentencing involving incarceration[,]" and he is a standard offender convicted of a Class C felony. Tenn. Code Ann. §§ 40-35-102(5), -105 (2016). Thus, Defendant was "a favorable candidate for [probation] in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2016).

*Argument at Sentencing Hearing Concerning Probation*

The State conceded that the "case today rests solely on [Tennessee Code Annotated section 40-35-103(1)](B) where confinement is necessary to avoid depreciating the seriousness of the offense" and is "particularly suited to provide an effective deterrence to others likely to commit [a] similar offense." Tenn. Code Ann. § section 40-35-103(1)(B) (2016).

Defendant argued that, pursuant to *Travis*, if the court denied probation based solely on the circumstances of this vehicular homicide, "it would have to be clear that the criminal act, as committed, would be described as especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree." *Travis*, 622 S.W.2d at 534. Defendant also argued that, pursuant to *State v. Trent*, 533 S.W.3d 282 (Tenn. 2017), the trial court should consider the six *Electroplating* factors. *Electroplating,* 990 S.W.2d at 229. Defendant claimed that the proof showed that he was amenable to correction, had no prior criminal record, had a favorable social history, and

that his physical and mental health were good. Defendant asked that his sentence be served on probation.

*Trial Court's Findings*

Concerning probation, the court stated that it had "looked at probation factors and considered each and every one of them." The court specifically noted "*excessive speed*" and that Defendant's car that actually "*went over into the grass when it began to pass, obviously in a hurry* to get there" because he was late for guard duty and knew he was going to be "docked pay." The court found that it was a "horrific accident" with "great loss for the family."

*Seriousness of the Offense*

In no way do we intend to imply that the trial court did not look at and consider each and every probation factor. However, the reasons articulated by the trial court justifying Defendant's sentence all relate to the single principle codified in the first clause of Tennessee Code Annotated section 40-35-103(1)(B)—that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense." Unfortunately, the trial court failed to explain on the record any findings concerning other principles, including the principle argued by the State—that "[c]onfinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses." Tenn. Code Ann. § 40-35-103(1)(B) (2016). We do not, however, fault the trial court for not addressing deterrence because the State presented no proof of the need for deterrence. *See State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000) (emphasizing that "the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated").

Based on the limited oral findings in the record, we conclude that the trial court based its decision to deny full probation and to impose a sentence of split confinement *solely* on the seriousness of the offense.

*State v. Trent*

In *Trent*, our supreme court stated:

When the seriousness of a defendant's crime is the sole reason for ordering incarceration, the circumstances of the particular crime committed by the defendant must be evaluated. This [c]ourt has long held that

- 12 -

> if probation is to be denied because of the nature of the offense, it would have to be clear that the criminal act, *as committed*, would be described as especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree; and it would have to be clear that, therefore, the nature of the offense, *as committed*, outweighed all other factors . . . which might be favorable to a grant of probation.

*State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981).

Although *Travis* predates the Sentencing Act by several years, this Court has continued to recognize its vitality, most recently in *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (per curiam) (citing *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006)). The *Travis* factors make sense within the matrix set forth in the Sentencing Act because the Act renders eligible for probation certain defendants committing certain crimes. That is, our legislature has specified that a sentence of probation is to be considered for certain defendants who commit certain crimes regardless of the basic elements of those crimes. If trial courts were permitted to deny probation solely on the basis of the elements of probation-eligible offenses, then the statute providing for probation-eligibility for those offenses would be rendered a nullity. Our obligation to construe statutes in a manner to avoid nullification of any other statutes prohibits this outcome. *See Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975); *Braswell v. AC & S, Inc.*, 105 S.W.3d 587, 590 (Tenn. Ct. App. 2002); *City of Caryville v. Campbell Cnty.*, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983).

> Accordingly, before a trial court can deny probation solely on the basis of the offense itself, the circumstances of the offense as *particularly committed in the case under consideration* must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense.

*Trent*, 533 S.W.3d at 292-93 (Tenn. 2017) (emphases in original). Factors that constitute an element of vehicular homicide cannot be considered by the trial court in determining whether the circumstances of the offense "are sufficient to deny an alternative sentence." *Id.* at 293.

The *Trent* court determined that "the trial court did not adequately comply with the many and various prerequisites that must be satisfied before imposing a sentence."

*Id.* at 295.  The *Trent* court noted that "because the trial court was not more explicit in its reasoning, we are concerned that it may have ordered incarceration based simply upon the elements of the crime in spite of our legislature having provided that persons who commit vehicular homicide by intoxication are eligible for probation."  *Id.*  The *Trent* court recognized that when a trial court "fails to make sufficient findings in a case," an "appellate court may undertake an independent review of the record" if the record is "sufficient to allow meaningful appellate review."  *Id.*  In *Trent*, the court determined that the record on appeal was insufficient, reversed this court's order placing the defendant on full probation, and remanded the case "to the trial court for a new sentencing hearing."  *Id*. at 296.

*Elements of Vehicular Homicide*

As applicable here, "[v]ehicular homicide is the reckless killing of another by operation of an automobile, . . . as the proximate result of: [c]onduct creating a substantial risk of death or serious bodily injury to a person[.]"  Tenn. Code Ann. § 39-13-213(a)(1) (2016).  A person acts recklessly when the person is

> aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c) (2016).

By passing another vehicle in a no-passing zone and speeding to do so, Defendant "consciously disregard[ed] a substantial and unjustifiable risk of death" to motorist approaching from the opposite direction.  Tenn. Code Ann. § 39-13-213(a)(1) (2016).  His conduct caused the death of two victims.

Because vehicular homicide, under Tennessee Code Annotated section 39-13-213(a)(1), involves the reckless operation of a vehicle that causes the death of another person, the offense is almost always to some extent "violent, horrifying, shocking, reprehensible[, and] offensive[.]"  *Travis*, 622 S.W.2d at 534.  However, if probation is to be denied "because of the nature of the offense, it would have to be *clear* that the criminal act, as committed,  would be described as *especially* violent, horrifying, shocking, reprehensible, offensive, *or otherwise of an excessive or exaggerated degree*[.]"  *Id.*  (emphasis added).  The trial court did not find that these vehicular homicides, as terrible as they were, were "*especially* violent, horrifying, shocking, reprehensible, offensive, or otherwise of *excessive or exaggerated degree*[.]"  *Id.*

- 14 -

Therefore, we must *either* remand to the trial court for a new sentencing hearing or conduct a de novo review to determine whether "the nature of [this vehicular homicide], as committed, outweighed all other factors . . . which might be favorable to a grant of probation." *Trent*, 533 S.W.3d at 295. In this case, the trial court conducted a thorough sentencing hearing with numerous witnesses and an extensive presentencing report. Because the record in this case is "sufficient to allow meaningful appellate review," we will "undertake an independent review of the record[.]" *Id.*

*Factors Favoring Probation*

In *Trent*, our supreme court stated:

We agree with our Court of Criminal Appeals that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *State v. Jeremy Brandon Scott*, No. M2010-01632-CCA-R3-CD, 2011 WL 5043318, at *11 (Tenn. Crim. App. Oct. 24, 2011) (citing [*State v.*] *Bingham*, 910 S.W.2d [448,] 456 (Tenn. Crim. App. 1995), [overruled on other grounds by *State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000)]. Those factors include (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value. *See State v. Electroplating, Inc.*, 990 S.W.2d at 229.

*Trent*, 533 S.W.3d at 291.

The trial court stated during the sentencing hearing that Defendant "has been productive in the community and has close ties, [has] done well[,] and is a young man who has a clean record[.]" Based on the evidence presented at the sentencing hearing, including the presentence report, we agree with this statement of the court and determine that the Defendant's lack of a criminal record, social history, and physical and mental health were *Electroplating* factors favoring probation. Moreover, we determine, based on NCO Hensley's testimony, that Defendant was amenable to correction. As mentioned previously, there was no evidence presented at the sentencing as to what "deterrence value" split confinement would have on Defendant "as well as others." *Electroplating*, 990 S.W.2d at 229.

None of the principles listed in Tennessee Code Annotated section 40-35-102(3) (2016) support denial of full probation. The only principle in Tennessee Code Annotated section 40-35-103(1) articulated by the trial court supporting its decision to deny

- 15 -

probation was the "necessity to avoid depreciating the seriousness of the offense." Four of the six *Electroplating* factors were favorable to a grant of probation, as well as Defendant's amenability to correction, and there was no proof presented at the sentencing hearing as to the deterrence value of incarceration. That leaves only one *Electroplating* factor, the circumstances of the offense, that supports a sentence of split confinement and the denial of full probation. As terrible as these vehicular homicides, it is not "clear" from the record that "the nature of [this vehicular homicide], as committed, outweighed all other factors . . . which might be favorable to a grant of probation." *Travis*, 622 S.W.2d at 534.

Because trial court failed to make sufficient findings to support its decision to deny a sentence of probation, the presumption of reasonableness does not apply. *State v. James R. Baysinger*, No. E20180-02295-CCA-R3-CD, 2019 WL 7049684, at *10 (Tenn. Crim. App. Dec. 23, 2019). We hold that the trial court erred in not granting full probation.

*Sentence Length*

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2019).

When questioned by the trial court concerning enhancement factors under Tennessee Code Annotated section 40-35-114, the State responded that the only enhancement factors are elements of vehicular homicide.

When questioned by the trial court concerning mitigating factors under Tennessee Code Annotated section 40-35-113, counsel for Defendant responded that the court should consider under the "catchall" factor, subsection 40-35-113(13), that Defendant did not have a criminal record.

- 16 -

Following argument of counsel, the trial court found that there were "almost" no enhancement factors and mitigating factors "on either side." The court noted that "[f]or enhancement factors, there w[ere] personal injuries, great amount of loss with two lives taken[,] and beyond that you have pretty much [a] difficult time looking at reasons to enhance the sentence." Concerning mitigating factors, the court noted that it had "[a] difficult time mitigating because what we have here is a young man who has a clean record but beyond that, there's not a lot you can talk about."

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2019); *see also Bise*, 380 S.W.3d at 698 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

The trial court sentenced Defendant within the applicable three- to six-year range for a Class C felony committed by a Range I standard offender and in a manner consistent with the purposes and principles of the Sentencing Act. *Carter*, 254 S.W.3d at 346. We determine that the trial court did not wholly depart from the Sentencing Act and did not abuse its discretion in sentencing Defendant to a term of four years.

*Special Condition of Probation*

The trial court imposed a special condition of probation requiring Defendant to "at least three times per year during the period of probation speak to 10th, 11th and 12th grade students in various schools." Tennessee Code Annotated section 40-35-303(d) permits trial courts to impose conditions of probation that are "reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience[.]" *State v. Mathes*, 114 S.W.3d 915, 918 (Tenn. 2003), *see also* Tennessee Code Annotated section 40-35-303(d)(9). This special condition complies with the language of *Mathes* and with Tennessee Code Annotated section 40-35-303(d)(9). It also complies with Tennessee Code Annotated section 40-35-303(d)(3) which allows a trial court to order a defendant, without compensation, to perform service to the community. The special condition shall begin

upon the amended judgments becoming final or at such time the trial court orders following remand for entry of an amended judgment of conviction.

## **Conclusion**

We affirm the four-year sentence imposed by the trial court, but we reverse the denial of full probation. After our independent review of the record, we remand for entry of amended judgments of conviction placing Defendant on supervised probation.

_____
ROBERT L. HOLLOWAY, JR., JUDGE